No. 33,728

JOHN ROTH, *Appellant,* v. BEN G. HUSER et al., *Appellees.*

(76 P. 2d 871)

Opinion filed March 5, 1938.

*Robert C. Foulston, George Siefkin, Sidney, L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris, John F. Eberhardt,* all of Wichita, and *C. R. Holland,* of Russell, for the appellant.

*Claude I. Depew, W. E. Stanley, Lawrence Weigand, William C. Hook, Sidney J. Brick* and *Lawrence Curfman,* all of Wichita, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This action was brought by a landowner against his grantor and subsequent grantees of the grantor to quiet plaintiff's title to the oil and gas under his land.

The plaintiff, John Roth, purchased a half section of land in Ellis county, Kansas, from John T. Clarke, receiving a deed therefor dated March 9, 1904, which contained the following reservation, "reserving the mineral deposits thereon and therein, if any." The deed was regularly recorded by the plaintiff with the register of deeds of the county on April 6, 1904. On June 5, 1929, the grantor, John T. Clarke, executed and delivered to his brother, Maurice G. Clarke, a deed to "the mineral deposits and rights in and on" the land in question. This deed was recorded on June 20, 1929.

It is alleged in the petition that Harvey Penny, the agent of John T. Clarke, when he delivered the deed to plaintiff in March, 1904, orally and verbally stated to the plaintiff that the reservation clause in the deed referred only to gold or coal for which exploration was being made at that time in that county, and that it did not refer to or include any other mineral, and relying upon said statements, agreements, understanding and construction of said clause, as represented by the agent of said John T. Clarke, he paid the consideration named in the deed and has been in adverse and exclusive possession of the land since that date, and is the absolute owner of all the mineral rights in and to the land except the gold and coal.

The defendant, John T. Clarke, filed a disclaimer, and Maurice G. Clarke filed an answer alleging his ownership of all the mineral deposits of every kind in and on said land by virtue of the deed to him from John T. Clarke, dated June 5, 1929, attaching a copy. The reply was a general denial and special denial of any rights under the conveyance of mineral deposits, alleging it to be without consideration, and further alleging that at the time the conveyance was made to plaintiff in 1904 there was no oil or gas known to be in the western part of Kansas or in any part of Kansas except the extreme eastern part of the state, and oil and gas were not at that time known or considered to be minerals or mineral deposits. That neither the plaintiff nor the grantor intended the reservation to apply to oil or gas, but only to gold and coal, as there had been a gold scare in that county just prior to the delivery of the deed to plaintiff.

Evidence was introduced. Findings of fact and conclusions of law were made and judgment was rendered in favor of the defendant quieting his title to the mineral deposits in and under said land, from which judgment the plaintiff appeals.

The appellant states the following five questions as being involved:

"First: Are the words 'mineral deposits' used in a deed executed in Ellis county, Kansas, on March 9, 1904, sufficiently ambiguous to permit of the introduction of parol evidence to show the intention of the parties thereto?

"Second: If not, do they become so, within the latent ambiguity rule, when proof of the surrounding circumstances shows that oil and gas were then unknown in Ellis county but that considerable gold and coal excitement was then prevalent?

"Third: If parol evidence be admissible, did the agent of plaintiff's grantor have implied or apparent authority to explain to plaintiff the meaning of those words in the deed which plaintiff did not understand?

"Fourth: If not, did the grantor ratify his agent's acts by his conduct subsequent to the delivery of the deed, or did his subsequent conduct disclose that he had not intended to reserve any oil and gas rights?

"Fifth: Is the defendant, brother and immediate grantee of plaintiff's original grantor, a bona fide purchaser for value of the oil and gas in question?"

The question of the use of parol evidence to alter or vary the terms of a written instrument is back of most of these questions because of the universal caution with which such is used. (*Radebaugh v. Dillon,* 119 Kan. 492, 240 Pac. 406, and *Gustason v. Dean,* 143 Kan. 845, 57 P. 2d 69.) In this case, however, the evidence was introduced over the objection of the defendant, the court expressing a doubt when overruling the objection. Such evidence being introduced, whether properly or not, the questions go more nearly to the sufficiency thereof than to the legality, the defendant raising no question as to its legality by cross-appeal. Appellant suggests that the case is before this court upon what amounts, for all practical purposes, to an agreed statement of facts. The appellant's view of the facts in the case was expressed in sixteen requested findings of fact, of which the court used and approved four, modified and changed three and rejected nine. The four that the court adopted are as follows:

"1. In March, 1904, or prior thereto, there were no producing oil wells within 225 miles of Hays, Ellis county, Kansas, the nearest oil fields then in existence being Eastern Kansas shallow fields in Chautauqua county.

"3. In March, 1904, or prior thereto, the existence of oil or/and gas as a commercial product was unknown in Ellis county.

"7. When John Roth purchased the land in question, he dealt entirely with Harvey Penney. Mr. Penney, acting as the agent of John T. Clarke, made all of the preliminary negotiations with John Roth, drew up the contract of sale, accepted the purchase price and delivered the deed to John Roth.

"14. Neither John T. Clarke nor Maurice G. Clarke had ever, prior to the date of the filing of this action, made any inquiry of John Roth concerning the oil and gas in and under his land nor made any claim to him that they possessed any right in and to such oil and gas."

Aside from requests the court made findings to the effect that prior to 1904 there had been some little exploration for oil, gold and coal within twenty miles of the land in question, but no oil, gold or coal had been discovered in commercial quantities. The court further found that in March, 1904, oil was being produced in commercial quantities in Kansas about 225 miles from the land in question; that an oil well was being drilled between August and

October, 1903, in Ellis county, and reached the depth of 1,200 feet. Several mentions of it were made in the newspaper published in the city of Hays during September and October, 1903, and that two test wells were drilled in Rush county in 1903, but no oil or gas has been taken from the land in question and no drilling for either has taken place thereon, but plaintiff has taken stone from the surface of the ground for posts and building. That a conversation as to the meaning of the reservation of mineral deposits in the deed was had between plaintiff and Harvey Penney when the deed to this land was delivered, at which time they discussed the possibility of gold and coal, but no mention was made by either of them as to the possibility of finding oil or gas upon the land. That prior to the filing of this action neither John T. Clarke nor Maurice G. Clarke had ever made any inquiry of plaintiff concerning oil and gas under this land nor made any claim that they possessed any right in and to such oil and gas.

That in addition to the four requested findings of the plaintiff, adopted by the court, there are the following findings about the agent, Harvey Penney:

"6. Harvey Penney was the agent of John T. Clarke for the purpose of negotiating for and carrying out the sale of the land in question to John Roth.

"4. At the time the deed in controversy was delivered to John Roth the plaintiff, by one Harvey Penney, who delivered said deed and collected the balance of the sale price of the land as the agent of John T. Clarke, the grantor in said deed—at the time said deed was delivered there was some discussion between said Harvey Penney and the plaintiff John Roth as to the meaning of the reservation of 'mineral deposits' in said deed. At that time the parties discussed the possibility of gold and coal, but no mention was made by either of the parties of the possibility of finding oil or gas upon the said land.

"8. There was no competent evidence that Harvey Penney was a general agent of John T. Clarke, or that he had any authority from John T. Clarke to contradict, vary or restrict the words included in the deed when John T. Clarke signed it and sent it to him for delivery to the plaintiff. The evidence showed nothing more than that Harvey Penney was an agent for the purpose of finding a purchaser for the land, collecting the purchase price and delivering the deed sent to him by John T. Clarke."

There are also the following findings as to evidence along other lines:

"10. There was evidence that F. S. Wassinger, about 1924, in connection with making up an abstract of title to this land, wrote a letter to John T. Clarke sending him a quitclaim deed covering this land, requesting that John T. Clarke sign the quitclaim deed and return it; that F. S. Wassinger received

a letter back from John T. Clarke returning the deed unsigned; that he gave the letter to some banker in Victoria, whose name he does not recall; that he has no recollection as to the contents of the letter received from John T. Clarke. Mr. Martin Basgall testified that he saw a letter purporting to have been written to Mr. F. S. Wassinger by Mr. John T. Clarke, but that he has no recollection of what was in the letter. Mr. Joseph A. Mermis testified that he saw a letter purporting to be written from John T. Clarke to F. S. Wassinger, and that in the letter which he saw Mr. Clarke asked Mr. Wassinger to send him a quitclaim deed and he would make further investigations. The deed was a release of that particular reservation in Mr. Roth's deed. Mr. John Roth, Jr., testified that he saw a letter purporting to have been written by John T. Clarke to Mr. Joseph A. Mermis and F. S. Wassinger and that his recollection of the contents of it was as follows:

" 'It kind of read that it would be necessary for him to sign an instrument or quitclaim deed as long as it was only a coal and gold right.'

"None of these witnesses identified any letter as having been written by John T. Clarke or identified the letter which F. S. Wassinger received and gave to a banker at Victoria as the same letter seen by Mr. Basgall or the same letter as that seen by Mr. Mermis, or the same as the letter seen by John Roth, Jr., and no two of the witnesses testified alike as to their recollection of the contents of the letters they saw. None testified that there was any mention of oil or gas in the letter or letters, or any statement to the effect that John T. Clarke did not intend to reserve and did not claim to own the oil and gas rights. He did refuse to·sign a quitclaim deed to enable the plaintiff to make a valid oil and gas lease. ·

"11. The defendant Maurice G. Clarke received the conveyance of the mineral rights in question from his brother John T. Clarke in satisfaction of a debt of seven hundred ($700) dollars, representing money that he had previously advanced to his brother.

"12. The conveyance of mineral rights from John T. Clarke to Maurice G. Clarke was not by quitclaim deed, but was by a direct grant and conveyance, the granting clause reading as follows:

" 'Grants and conveys to Maurice G. Clarke, state of Oklahoma, the mineral deposits and rights in and on the following described real estate.'

"13. Maurice G. Clarke has not received and cannot obtain anything from John T. Clarke for the seven hundred ($700) dollars except the mineral rights in question."

### The trial court made the following conclusions of law:

"1. The deed in question was unambiguous on its face, and there being no words in the instrument indicating any intention to limit or restrict the meaning of the term 'mineral deposits,' parol evidence was not admissible to contradict, vary, limit or restrict the terms of the deed.

"2. The term 'mineral deposits' as used in said deed included oil and gas.

"3. The burden of proving the extent of the authority of Harvey Penney as an alleged agent of John T. Clarke was upon the plaintiff, and the plaintiff failed to prove that the said Harvey Penney was a general agent of John T. Clarke or had any authority to contradict, vary, limit or restrict the meaning

of the words appearing in the deed at the time it was signed by John T. Clarke and sent to Penney for delivery to Roth.

"4. There was no competent evidence to prove any ratification by John T. Clarke of the claimed understanding of the plaintiff that oil and gas were not excepted in the deed. The only person who identified any letter as having been received from John T. Clarke, Mr. Wassinger, had no recollection of the contents of the letter; and the letter was not identified by any of the other witnesses who claimed to have seen it, and at best their identification of it would necessarily be hearsay—second, third or fourth hand.

"5. The conveyance of the mineral rights by John T. Clarke to the defendant Maurice G. Clarke was based on a valid consideration, to wit: the release of an indebtedness of seven hundred ($700) dollars; and, since the testimony showed that this mineral right was all that Maurice G. Clarke can ever get for his $700 and the statute of limitations has now run on his claim against John T. Clarke, the said Maurice G. Clarke is an innocent holder for value of the mineral rights in question and had a right to rely upon the record as it appeared in the office of the register of deeds of Ellis county, Kansas, when he took the conveyance of these mineral rights and released his claim of seven hundred ($700) dollars.

"6. The issues generally are found in favor of the defendant Maurice G. Clarke and against the plaintiff John Roth, and the said defendant Maurice G. Clarke is entitled to judgment quieting his title to the mineral deposits in the land in question, including the oil and gas."

The appellant makes six assignments of error: (1) overruling motion for new trial, (2) overruling motion to modify findings of fact, (3) overruling motion to modify conclusions of law, (4) adopting findings of fact requested by defendant, (5) adopting conclusions of law requested by defendant, and (6) refusing to adopt findings and conclusions requested by plaintiff.

Since the trial court overruled the objection of the defendant to the introduction of evidence tending to alter or vary the terms of the written instrument and to show the intention of the parties thereto, the case becomes one of fact rather than law, and if there was sufficient evidence to sustain the findings and the conclusions are supported by the findings, the judgment must be affirmed. There was very little conflicting testimony, but it hardly went far enough to sustain the allegations of the plaintiff.

The appellant in his very able and comprehensive brief shows instructively by numerous decisions from this and other states the change in the meaning of the word "minerals" until even by a reversal of position in some states it has come to be generally held to include oil and gas, and it has been so held in Kansas since March 12, 1904, when in the case of *Zinc Co. v. Freeman*, 68 Kan.

691, 75 Pac. 995, it was held that petroleum and gas are minerals, and as long as they remain in the ground they are a part of the realty.

The first proposition discussed in the appellant's brief is that extrinsic evidence was admissible to ascertain the meaning of the phrase "mineral deposits." Patent and latent ambiguities are carefully distinguished and numerous cases and texts are cited by both parties on the subject of the right to use parol evidence under such circumstances, and it must be admitted that it is proper when either a patent or latent ambiguity actually exists. The trial court has covered the matter here in the conclusions of law as well as in the findings of fact. Had the same legal decision been made as to there being no ambiguity, when the objection was made to the introduction of certain evidence, the legal question would have been of vital importance. It is different when the evidence has been introduced and findings have been made against the claim of the appellant.

It is called to our attention that the many decisions and texts cited by both parties, dealing with the meaning of the word "minerals," as does the Freeman case, *supra,* do not treat the phrase, "mineral deposits," which is the language used in the deed in this case. It is suggested that while oil or gas may be "minerals," they are not "deposits" or even capable of being deposits, in the usual and practical meaning of that word. In 1897, which was seven years before this deed was executed, the legislature of this state passed an act, chapter 244, requiring separate assessments to be made where one owned the land and another owned the "minerals therein." In applying this term in the case of *Gas Co. v. Oil Co.,* 83 Kan. 136, 109 Pac. 1002, it was said:

"It is argued that the act was only intended to apply to solid minerals, such as coal, lead and zinc, and that because of their peculiar attributes oil and gas are not capable of ownership in place and cannot have been within the legislative purpose. The terms of the act are broad enough to embrace minerals of every kind, and it is well settled that oil and gas, although fugitive fluids, are minerals. (*Zinc Co. v. Freeman,* 68 Kan. 691; *Murray v. Allred,* 100 Tenn. 100.) It has also been determined that although oil and gas in place are a part of the realty, the stratum in which they are found is capable of severance, and by an appropriate writing the owner of the land may transfer the stratum containing oil and gas to another. Such party acquires an estate in and title to the stratum of oil and gas, and thereafter it becomes the subject of taxation, encumbrance or conveyance." (p. 139.)

· We approve and adhere to this ruling. (See, also, 18 R. C. L. 1094.)

.The appellant treats at length two other subjects entitled, "The original parties to this deed did not intend that the words, 'mineral deposits,' should include oil and gas" and "Maurice G. Clarke has no greater right in and to plaintiff's land than did his grantor, John T. Clarke." The first was covered in general in what has been said as to ambiguities and the findings of fact, and the second is fully answered when it has been found that the reservation in the grantor, John T. Clarke, was good.

Technically speaking, the interest in the land retained by the grantor in his deed to the plaintiff was an exception, rather than a reservation, but the two terms are often used interchangeably and the technical meaning will give way to the manifest intent.

We find no error in the rulings under the assignments made.

The judgment is affirmed.