No. 61,423

IN THE MATTER OF THE FRANK AND LOTUS HUXTABLE LIVING TRUST.

(757 P.2d 1262)

Opinion filed July 8, 1988.

*Dale H. Cooper*, of Wichita, argued the cause and was on the brief as guardian ad litem for appellant Rebecca R. Huxtable, a minor.

*William P. Tretbar*, of Fleeson, Gooing, Coulson & Kitch, of Wichita, argued the cause, and *Mary Ruth Byerley* and *Lyndon W. Vix*, of the same firm, were on the brief for appellees William Antisdel, Michael Antisdel, Barry Antisdel, Kimberly Knapp, and Cynthia Ferguson.

*John W. Sumi*, of Adams, Jones, Robinson & Malone, Chartered, of Wichita, argued the cause and was on the brief as guardian ad litem for appellee Julia Root, a minor.

*Robert M. Collins*, of Wichita, argued the cause and was on the brief as guardian ad litem for appellees Kevin Root and Jarad Allen Root, minors, and as attorney for appellees Steven R. Root and Gregory A. Root, who are in the military service.

The opinion of the court was delivered by

HOLMES, J.: This is an appeal from a determination by the trial court that the dispositive language of an inter vivos trust instrument was unambiguous and that extrinsic evidence as to the intent of the settlors was inadmissible.

The facts are not in dispute. On March 6, 1986, Frank L. Huxtable and Lotus M. Huxtable, husband and wife, executed an inter vivos trust instrument naming as trustee the Fourth National Bank and Trust Company of Wichita (now Bank IV Wichita, N.A.). Upon the death of both settlors, the trust provided as follows for distribution of the trust corpus:

"B. Distributions Upon Death of Both Settlors. At such time as both Settlors shall have become deceased, the entire trust estate, both principal and accumulated income, shall be distributed in equal shares unto Settlors' nieces and nephews (these being Wally Huxtable, Tom Huxtable and Beth Michaels

(nephews and niece of Frank L. Huxtable) and Lorraine Nelson (niece of Lotus M. Huxtable)) and Settlors' grand-nieces and grand-nephews, i.e., an equal share shall be distributed to each such niece, nephew, grand-niece and grand-nephew. If any niece or nephew is then deceased, the gift to such beneficiary shall lapse and shall be added equally unto the shares of the other beneficiaries; and if any great-niece or great-nephew shall then be deceased, such beneficiary's share shall pass to her or his issue, by right of representation, or, if there be no such issue, the gift to such beneficiary shall lapse and shall be added equally unto the other shares under this Article."

Frank L. Huxtable died May 23, 1986, and Lotus M. Huxtable died August 25, 1986. The trustee determined that there were ten nieces and nephews (eight living, two deceased) in addition to the four who were specifically named as beneficiaries in the trust instrument. Those ten nieces and nephews collectively had eighteen living children who are grandnieces and grandnephews of the settlors. The four nieces and nephews named in the trust as beneficiaries collectively have thirteen living children who are settlors' grandnieces and grandnephews.

The trustee filed a petition seeking construction of the trust to determine whether all thirty-one grandnieces and grandnephews were to share as beneficiaries, or just the thirteen who are the children of the four named nieces and nephews. All parties apparently agree that the class of nieces and nephews is limited to the four specifically named individuals, and the other eight living nieces and nephews are not involved in this litigation. The parties to this appeal are a representative of the class made up of the thirteen children of the named nieces and nephews (Group A or appellant) and representatives of the class comprising the eighteen children of the nieces and nephews who were not named (Group B or appellees). If the distribution of the trust assets only includes Group A then the trust estate will be divided among seventeen persons, but if Group B is included, the trust will be divided among thirty-five persons.

The district court considered the parties' trial briefs on the admissibility of extrinsic evidence of the settlors' intent, consisting of testimony of the scrivener of the trust agreement. The court held that parol evidence was not admissible to construe the provision in question. It held that the provision was clear and unambiguous in directing distribution to the four named nieces and nephews and all thirty-one grandnieces and grandnephews (both Group A and Group B). The court's order did not permit the parties to submit briefs on the question of the identity of the

lawful beneficiaries of the trust, since it held that the beneficiaries were determinable "from the four corners of the instrument as same is clear and unambiguous."

The basic issue raised on appeal is whether the provision in question contains a latent ambiguity as to the intended beneficiaries of the trust remainder. The appellant contends there is a latent ambiguity because the conceded facts concerning the settlors' relatives raise a question whether the settlors intended to limit the term "grandnieces and grandnephews" to the thirteen children of the four named nieces and nephews. The appellees argue that the trust provision contains no latent ambiguity since it clearly and unambiguously specifies that the "Settlors' grand-nieces and grand-nephews" are to share in the distribution, meaning *all* thirty-one members of that class.

When either a patent or latent ambiguity actually exists in a written instrument, parol evidence is admissible to ascertain the meaning of the words used. *Roth v. Huser*, 147 Kan. 433, 439, 76 P.2d 871 (1938). Whether an instrument is ambiguous is a matter of law to be decided by the court. *Mobile Acres, Inc. v. Kurata*, 211 Kan. 833, 839, 508 P.2d 889 (1973). The construction of a written instrument is a question of law, and the instrument may be construed and its legal effect determined by an appellate court. *Peterson v. Midland Nat'l Bank*, 242 Kan. 266, Syl. ¶ 1, 747 P.2d 159 (1987).

The parties have gone to great lengths in their trial briefs and appellate briefs to define the term "latent ambiguity" as distinguished from "patent ambiguity."

"A latent ambiguity is one that is not apparent upon the face of the instrument alone and that is discovered *when it is sought to identify* the property, *the beneficiaries,* etc. . . . .

. . . [A] latent ambiguity is defined as one which is not discoverable until extrinsic evidence is introduced to *identify the beneficiaries* or the property disposed of by will, when it is developed by such evidence, either that the description in the will is defective, or that it applies equally to two or more persons or things." (Emphasis added.) 4 Bowe-Parker: Page on Wills § 32.7, p. 255 (rev. ed. 1961).

In contrast, a patent ambiguity is one which is apparent on the face of an instrument; for example, a will which in different clauses devises the same item of property to two different individuals. Although the modern trend is toward elimination of the distinction between the two, the terms are still helpful to iden-

tify those situations in which extrinsic evidence is admissible. See 4 Williston on Contracts § 627 (3rd ed. 1961); 4 Bowe-Parker: Page on Wills § 32.7, p. 255. When there is a patent ambiguity extrinsic evidence of the intent of the settlor is clearly admissible. The same is true if there is an actual latent ambiguity. The difficulty arises in determining whether an ambiguity actually exists when it is asserted that a written instrument contains a latent ambiguity that requires extrinsic evidence as to the true intent and meaning of the language used.

The parties agree that there is no patent ambiguity in the language used by the settlors and that the trust instrument on its face is not subject to construction. However, Group A contends that the language "Settlors' grand-nieces and grand-nephews" creates a latent ambiguity because the naming of the four nieces and nephews results in two different groups of grandnieces and grandnephews. Thus, they contend, extrinsic evidence is admissible to determine the actual intent of the settlors. We do not agree.

At the outset it must be determined whether the Huxtable trust agreement contains any ambiguity which would require the admission of extrinsic or parol evidence to explain its terms. While most of the published cases involve the construction of provisions in wills, the same rules that apply to their construction apply to trusts and most other written documents. *In re Estate of Hauck*, 170 Kan. 116, 119-20, 223 P.2d 707 (1950). Appellant argues that because the settlors placed a limitation upon the class of nieces and nephews by specifically naming four when there were actually twelve living, the court should have allowed extrinsic evidence to show the settlors' intent was to limit the broad class of grandnieces and grandnephews to only the children of the four named nieces and nephews. It is clear that the language, "Settlors' grand-nieces and grand-nephews," standing alone, is all-inclusive. For the court to limit the extent of that language would require a construction of the trust instrument which is not required by the document itself or the language therein.

It is the general rule that if the language of a written instrument is clear and can be carried out as written there is no room for rules of construction. Numerous cases have so held. In *In re Estate of Wernet*, 226 Kan. 97, 596 P.2d 137 (1979), we held:

"Where a court, either trial or appellate, is called upon to determine the force and effect to be given the terms of a will, its first duty is to survey the instrument in its entirety and ascertain whether its language is so indefinite and uncertain as to require the employment of rules of judicial construction to determine its force and effect; and where from an analysis of the entire instrument no ambiguity or uncertainty is to be found in its language, the intention of the testator being clearly and unequivocally expressed, there is no occasion to employ rules of judicial construction and the will must be enforced in accordance with its terms and provisions." Syl. ¶ 1.

"When the language of a will is clear, definite and unambiguous, the court should not consider rules of judicial construction to determine the intention of the testator." Syl. ¶ 2.

See *In re Estate of Graves*, 203 Kan. 762, 768, 457 P.2d 71 (1969), and cases cited therein.

The appellant argues that since the settlors named only four of their nieces and nephews as beneficiaries, they must have intended to also limit the class of grandnieces and grandnephews to the children of the named nieces and nephews. They further argue that this intention can only be ascertained through the admission of parol evidence in the form of testimony from the scrivener of the instrument.

We find no persuasive authority for the argument that a limitation as to one group of specifically named beneficiaries may be imputed to a separate class so as to raise a latent ambiguity. If the settlors had intended to limit the class of grandnieces and grandnephews as the appellant asserts, they could have easily done so on the face of the instrument by naming specific grandnieces and grandnephews in the same way they named specific nieces and nephews or by using language to indicate that only the children of the named nieces and nephews were intended.

In *Graves*, we stated:

"There is nothing to indicate that the testatrix did not use the words she intended to use. Neither is there anything to indicate she did not understand the meaning of the words used. . . .

"The language of the will being clear, definite and unambiguous, we need not, and should not, consider rules of judicial construction to determine the intention of the testatrix." 203 Kan. at 768.

"The duty of the court is to construe not to construct the will. It is without power to modify the instrument for the purpose of making it conform to the opinion of the individual judge as to what constitutes an equitable distribution of the testator's property." 203 Kan. at 769-70.

The court in *Graves* went on to quote from 4 Bowe-Parker: Page on Wills § 30.7, as follows:

" 'The question always before the mind of the court is not what should testator have meant to do or what words would have been better for testator to use, but what is the reasonable meaning of the words which he has actually used.

. . . .

" 'In construing a will the court has no power to make a will for the testator or to attempt to improve upon the will which the testator actually made. The court cannot begin by inferring testator's intention and then construe the will so as to give effect to this intention, however probable it may be; nor can it rewrite the will, in whole or in part, to conform to such presumed intention.' " 203 Kan. at 771.

In support of her contention that the existence of nieces and nephews in addition to the four specifically named creates an ambiguity as to whether the settlors intended to benefit only the children of the four named nieces and nephews, appellant relies on *Willard v. Darrah*, 168 Mo. 660, 68 S.W. 1023 (1902); *Scheurer v. Tomberlin*, 240 So. 2d 172 (Fla. Dist. App. 1970); and *Wittmer Estate*, 151 Pa. Super. 274, 30 A.2d 197 (1943). While these cases clearly involved latent ambiguities, they are of little help to appellant.

In *Willard*, the testator made a gift to "my well-beloved nephews, John and William Willard." The testator had a nephew named John Willard but no nephew named William Willard. He had grandsons named John and William Willard and grand-nephews by the same names. The court held that since no two individuals perfectly fit the description in the will, an ambiguity existed and parol evidence was admissible to show that the word "nephews" was a mistake. That done, further parol evidence was admissible to resolve the double identity ambiguity of whether the testator meant his grandnephews John and William or his grandsons John and William. Neither of the types of ambiguities found in the *Willard* case is present in the Huxtable trust.

In *Scheurer*, the testatrix devised the residue of her estate to her "presently-living grandchildren." In attempting to distribute the residue, it was discovered that the testatrix had never had any children and therefore had no "grandchildren." It was determined, however, that the testatrix had stepchildren from two marriages and therefore two groups of step-grandchildren who might have been her "grandchildren." The court found that an ambiguity existed and parol evidence was admitted to show which group of step-grandchildren, if either, the testatrix considered to be her "grandchildren."

*Wittmer Estate* involved construction of a will clause which left the testator's residual estate to his "nephews and nieces." The testator had no nephews or nieces, and parol evidence was allowed to show that the testator's deceased wife did have nephews and nieces who he considered as his own, and also to show it was his intention to leave the estate to them.

In all the foregoing cases, it was impossible to carry out the apparently unambiguous language of the written instrument, and as a result a latent ambiguity was present. In the present case, no such latent ambiguity exists. The Huxtable trust agreement designates two classes of persons: one consisting of four specifically named nieces and nephews and one consisting of the settlors' grandnieces and grandnephews. The trust provisions may be readily carried out without extrinsic evidence of the settlors' alleged intent. If the settlors had wanted to limit the second class, they could easily have done so.

"This court has repeatedly held that extrinsic evidence is not admissible to show the intention of the testator where there is no ambiguity in the language used, or to give the language of the will a meaning different from that which the law attributes thereto." *Baldwin v. Hambleton*, 196 Kan. 353, 356, 411 P.2d 626 (1966).

We agree with the trial court that the trust agreement was not ambiguous, that it can be carried into effect without the aid of extrinsic evidence, and that the agreement clearly designates a class consisting of all of the settlors' grandnieces and grandnephews. The ruling of the trial court refusing to allow extrinsic evidence under the facts of this case was correct.

The judgment is affirmed.