state of New York did not control in the distribution of the estate of deceased Indians. The surrogate of Niagara county had appointed administrators of the estate of the deceased, and his right to do so was also questioned. It was held that the Surrogate's Court had jurisdiction, that the state courts had jurisdiction, and that the laws of the state prevailed over the Indian custom. But it will be observed that the Tonawandas are not a separate and distinct nation. They were a fragment of the Senecas, living, not upon their ancient land, but upon land purchased by them from the Holland Land Company.

"It thus appears that the old Indian title and right of possession of the Indians was extinguished, and the Tonawanda Indians held title by virtue of the deeds and conveyances above set forth. The political sovereignty of the state of New York attached to every foot of the land embraced within the boundaries of the Tonawanda reservation."

The dead feast could not be considered an Indian probate court, for—

"such a court has no sanction for its existence in the Constitution or in any legislation of this state. It has never been recognized in law as having any legal existence."

Further than that, the custom of the dead feast, in so far as it was possible, was formally abolished by a resolution of the council of the tribe passed about the year 1888. The dead feast—

"we hold has been abolished by the action of the Indian council of the tribe, if it ever had any existence, and had no right to exercise powers of division and distribution over such estates."

On the Tonawanda reservation there had been allotments of land sanctioned by the Indian Law and the transfer of the land in question was made in pursuance to the provisions of that law. Under such circumstances, the decision of Judge Wheeler does not seem to be in point where the question relates to land on the Onondaga reservation.

Judgment is therefore ordered for the defendants, with costs.

Judgment for defendants, with costs.

---

(162 App. Div. 831)

BIGELOW v. PERCIVAL.     (No. 5746.)

(Supreme Court, Appellate Division, First Department.     May 15, 1914.)

1. WILLS (§ 441*)—CONSTRUCTION—INTENT OF TESTATOR.
    The intention of a testator is to be reached from the plain and ordinary import of the language of the will, where no uncertainty exists as to the meaning of such language, and extrinsic circumstances may be considered only where the language is ambiguous.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 958; Dec. Dig. § 441.*]

2. WILLS (§ 481*)—CONSTRUCTION—EXTRINSIC CIRCUMSTANCES—SUBSEQUENT CIRCUMSTANCES.
    Circumstances occurring subsequent to the execution of the will can throw no light upon the meaning of the language used by the testator, but if they are in harmony with those existing at the time of the making

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the will, they may fortify the existing circumstances as indicating the intention of the testator.

[Ed. Note.—For.other cases, see Wills, Cent. Dig. §§ 1005–1007; Dec. Dig. § 481.*]

3. WILLS (§ 488*)—CONSTRUCTION—EXTRINSIC CIRCUMSTANCES—AMBIGUITY OF LANGUAGE—"ENTITLE."

A testator created a trust in the stock of a corporation, "which I now hold, or to which I may be entitled at the time of my death," the income to be paid to his wife for her life, with power to sell a portion of the stock if necessary for her support, and the stock remaining at her death to go to the testator's brother, who was one of the trustees, if the testator had no issue. The brother was also given the right to purchase any of the stock sold under the directions of the wife. Practically all of the stock in the corporation at the date of the making of the will was held by testator and his brother and by their mother, under a trust created by their father's will, which gave the income thereof to the mother for her life, with power to sell if necessary for her support, and the stock to the brothers upon the death of their mother. At the time of the making of the will, the testator's mother was old and in poor health, and the testator was in good health. *Held*, that the expression "to which I may be entitled" was ambiguous, the word "entitled" meaning to give claim to, and the circumstances may be considered in determining whether the testator intended by that expression to refer to his interest in the stock held in trust under his father's will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1024, 1025, 1033–1036; Dec. Dig. § 488.*]

4. WILLS (§ 680*)—CONSTRUCTION—EXTRINSIC CIRCUMSTANCES—PROPERTY BEQUEATHED.

The provisions of the will and the surrounding circumstances indicate an intent to keep the stock of the corporation in the hands of the members of the family, and the clause will therefore be construed as including the testator's interest in the stock held in trust under his father's will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1594–1598; Dec. Dig. § 680.*

For other definitions, see Words and Phrases, vol. 3, pp. 2415, 2416; vol. 8, p. 7651.]

Appeal from Special Term, New York County.

Action by Frank L. Bigelow against Julie H. Percival. Judgment for the plaintiff, and defendant appeals. Affirmed.

The opinion of Greenbaum, J., at Special Term, was as follows:

[1] The intention of a testator is ordinarily reached from the plain and ordinary import of the language of the will, and "it is only where a word or clause is fairly capable of a double meaning that the effect of either construction * * * is a legitimate consideration." Van Nostrand v. Moore, 52 N. Y. 12, 16.

[2] It is also to be borne in mind that although conditions existing at the time of the making of the will may properly be considered in case of ambiguity, "circumstances occurring long after the execution of the will could not have been within the contemplation of the testator, and could therefore throw no light upon the meaning of the language which he then used." Morris v. Sickly, 133 N. Y. 456, 459, 31 N. E. 332; Matter of Hoffman, 201 N. Y. 247, 255, 94 N. E. 990. If, however, the subsequent circumstances are in consonance with those existing at about the time of the making of the will, the former may fortify the latter in seeking the intention of the testator. Keeping in view these general rules, it will be appropriate, first, to determine whether there is any ambiguity or doubtful meaning in the expressions used in the will. If no such uncertainty exists, the court is obliged to follow the ordinary import of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the words employed, regardless of any extrinsic evidence that may tend to contradict them. Humphreys v. N. Y., L. E. & W. R. R., 121 N. Y. 435, 444, 24 N. E. 695; Brown v. Quintard, 177 N. Y. 75, 83, 69 N. E. 225. The debatable clause in the will of Walter P. Bigelow 'under review is numbered "third," and reads in part as follows: "Third. I give and bequeath to my executors and trustees hereinafter mentioned all of the stock or shares in the Bigelow Company of New Haven, state of Connecticut, which I now hold or may be entitled to at the time of my death, to be held in trust by them during the lifetime of my dearly beloved wife, Julie Helene Georger Bigelow, the earnings or income from my said stock or shares in the said company to be paid by my said executors and trustees to my said dearly beloved wife, as earned, during her lifetime. ❦ * *" This clause further provides that if the testator's wife "shall at any time deem the income insufficient for her support and maintenance, she then being unmarried, then and in that event" the trustees are empowered to sell as much of said stock as his wife deems necessary for that purpose, and in that event it is further provided that his brother, the plaintiff, shall have the option of purchasing said stock at the valuation thereof as shown on the books of the company. The fourth clause provides that in the event of the death of the testator without leaving issue him surviving, then upon the death of his wife he bequeaths any or all of his shares or stock of the Bigelow Company "heretofore left in trust for the benefit of my wife, or so much of the same as shall remain at the time of her decease," to his "dearly beloved brother, Frank L. Bigelow, or his issue," provided, however, that in the event of the death of his brother without leaving issue him surviving during the lifetime of his wife, the trust in favor of his wife shall cease and determine and she shall then take all of the stock or shares of the Bigelow Company then remaining. By the fifth clause of his will the testator bequeaths his residuary estate to his wife. The final clause of the will confers power upon the executors and trustees "to sell any or all of my stock or shares in the Bigelow Company," with power of investment and reinvestment, the income to be paid to the wife, subject to the trusts and conditions expressed in the "third and fourth paragraphs" of the will. Walter P. Bigelow, the testator, executed his last will and testament on November 24, 1903, and died on March 7, 1907, at the age of 40 years. His death was unexpected and when in apparent good health. At the time of his death he had been married upwards of sixteen years. He died without issue, and left him surviving his widow (who has since remarried, and who is now Mrs. Walter Iles Percival); his mother, who died in May, 1912, in her seventy-eighth year, and his brother, Frank L. Bigelow, the plaintiff. The mother had been an invalid continuously and up to the day of her death since some years prior to her husband's death, which occurred in 1891. The testator's wife was about 30 years of age when the will was executed. The estate of the deceased, Walter P. Bigelow, consisted of 500 shares of the common stock of the Bigelow Company of the par value of $100 per share, which the testator owned absolutely, and of other available property, approximating in value the sum of $10,000. His indebtedness did not exceed $9,000. The testator also had an interest in the estate of his father, Hobart B. Bigelow, under the provisions of his father's will, which, after making certain specific legacies, directs his residuary estate to be divided into two equal parts, one of which he gave absolutely to his two sons (the testator and the plaintiff) in equal shares, and the other of said parts he gave to his wife, Eleanor L. Bigelow, the mother of Frank L. and Walter P. Bigelow, to "have the income and as much of the principal as she may require for her comfortable maintenance and support for and during her natural life, and whatever of said principal may remain at her decease I give, share and share alike, to my two sons, Frank L. and Walter P. Bigelow, to be theirs absolutely." As life tenant the mother had the right to use as much of the principal of the trust estate as she might require "for her comfortable maintenance and support," and under the law of the state of Connecticut she had the power of disposition of any of the securities and property that came to her under the trust, with authority to convert the investments from time to time, as she saw fit. When the mother died the trust estate in which she had a life estate consisted in large part of shares of stock of the Bigelow Company. It is claimed on behalf of the plaintiff that the testator,

Walter P. Bigelow, intended that all of his stock in the Bigelow Company, whether owned by him absolutely or in which he would have a reversionary interest from the trust estate created by his father, was to be held in trust for the benefit of testator's widow under the third clause of his will. On the other hand, it is contended on behalf of defendant Julie H. Percival "that no specific disposition was made by Hobart B. Bigelow's will of any of the Bigelow Company stock; that the remainder interest which the will of Hobart B. Bigelow gave to his son was not a remainder interest in Bigelow Company stock, but a remainder interest in a portion of Hobart B. Bigelow's residuary estate, subject to his wife's life interest therein, and subject to her absolute right, as trustee and life tenant, to change at any time and from time to time the securities in which the portion of the residuary estate was invested," and hence that the circumstance that testator's mother, as trustee under his father's will, held at the time of his death as investment of a portion of the trust estate certain shares of the Bigelow Company, in respect of which she had an inextinguishable power of sale, was no evidence of any intent on the part of Walter P. Bigelow to include under the "third" paragraph of his will the Bigelow Company stock which at the time of his death might remain in the hands of his mother, as trustee under her husband's will.

[3, 4] The third paragraph of the will creates a trust estate of the "stock or shares in the Bigelow Company * * * which I now hold or may be entitled to at the time of my death." Effect should be given the words "may be entitled to" if their meaning is plain. But their meaning is not plain. The testator clearly distinguished between stocks which he absolutely owned and had possession of when he made his will and stocks the ownership of which he might subsequently become entitled to. Could he have had in mind the remote contingency that might exist at the time of his death when, under some executory contract into which he might enter for the purchase of additional stock of the Bigelow Company, delivery thereof had not yet been made? Or did he have in mind the Bigelow Company stock then in his mother's possession under the trust arising under his father's will under the assumption that one-half thereof would be eventually his? Clearly an uncertainty exists as to the intention of the testator in respect of the words "or may be entitled to." The word "entitle" means "to give a claim to." The testator had a substantial interest in the Bigelow Company stock in his mother's possession as trustee. It is true that a possibility existed of his interest or claim being wiped out by the mother's exercise of her power to dispose of the stock for her own maintenance, or by her conversion of the stock into some other kind of security. But until the mother exercised this power the testator had an interest in one-half of this stock. Or, stating it somewhat differently, he had an interest in or claim to the stock, subject to be defeated by the exercise of the power of his mother above indicated. As a matter of fact, the mother, as trustee, had not, up to the time of her death, disposed of the Bigelow Company stock, and the estate of Walter P. Bigelow became absolutely entitled to one-half of the shares of the stock of that company, which then constituted a part of the Hobart B. Bigelow residuary estate. In the event that actually happened, we find a condition of affairs when it may be said that the estate of Walter P. Bigelow was "entitled to" the possession of specific shares of Bigelow Company stock. It is true that he may not be said to have been technically, or in a strict legal sense, entitled to them at the time of his death. But if all the circumstances indicate that the testator did not contemplate when he made his will that his mother would dispose of the Bigelow Company stock unless upon his and his brother's advice, and that he had in mind that he would eventually be entitled to one-half of the stock in his mother's possession, should not such circumstances be considered in determining his intention rather than to seek it by assuming that he had in mind the remote contingency that he might, at the time of his death, have an outstanding executory contract for the purchase of the Bigelow Company stock? Nor does the assumption that the will of Hobart B. Bigelow made no bequest in remainder of specific shares of Bigelow Company stock to Walter P. Bigelow, the testator, necessarily militate against plaintiff's contention. It may be that a presumption might arise that when the testator made his will he un-

derstood the legal effect of his father's will and had that in mind, but it does not therefore follow that this presumption may not be rebutted by attendant circumstances which establish that, as matter of fact, he did not have knowledge of nor in mind the strict legal effect of his father's will. Had testator's mother's death preceded his own, the trust estate in his mother's possession would have included Bigelow Company stock, and he would have been legally entitled to the possession of one-half. We have thus a situation in which the words "or may be entitled to," standing alone, are of equivocal or ambiguous meaning and resort to extrinsic circumstances contemporaneous with the execution of the will is necessary in order to ascertain the intent of the testator. Testator's mother died in 1912 at the age of 78 years, notwithstanding that she had been an invalid for upwards of 20 odd years before her death. Was it not, therefore, quite natural for the testator to assume that he would outlive his mother, and that upon her death he would be entitled to one-half of the trust estate held by her, and that a portion thereof would consist of Bigelow Company stock? When Hobart B. Bigelow died in 1891 his estate included an item of 285 shares of the Bigelow Company stock. On June 10, 1897, there was filed in the probate court of the district of New Haven, Conn., a statement showing the formal distribution of the estate of Hobart B. Bigelow, signed by plaintiff, his brother, Walter, the testator and their mother, Eleanor L. Bigelow. This statement, which was filed about six years before Walter P. Bigelow made his will, shows that the trust fund was of the value of $41,473.04, and included 143 shares of the Bigelow Company stock, at a valuation of $14,300. It appears that the Bigelow Company was organized in the year 1883, and that at the time of Hobart B. Bigelow's death the stockholders of the company consisted of Hobart B. Bigelow, Frank L. Bigelow, the plaintiff, Walter P. Bigelow, the testator, George S. Barnum, a warm, intimate friend of the family, and a Mr. Elson. The interest of Mr. Elson was small, and shortly after Hobart B. Bigelow's death it was bought up by his widow with insurance moneys that came to her, and the ownership of the stock of the Bigelow Company then was as follows: Eleanor L. Bigelow, as trustee, 192 shares and individually 7 shares; Frank L. Bigelow, 150 shares; Walter P. Bigelow, 150 shares; and George Barnum, 101 shares. Before the date of the execution of the Walter P. Bigelow will the Bigelow family had further added to their holdings in the company by the purchase of 49 shares from Mr. Barnum, so that they then owned all the stock of the company lacking 52 shares held by Mr. Barnum. The relations between the Bigelow brothers and their mother appear to have been most affectionate, and their interests in the Bigelow Company seem to have been uniformly harmonious and united. The conditions that existed up to the time of the making of the will point to an intention of the testator to keep the Bigelow Company stock in the Bigelow family, meanwhile providing a life income for his wife from the shares of stock of which he was absolutely possessed, and to which his estate would eventually be entitled after his death. The mother of the testator evidently relied upon the judgment of her sons in managing the property which she held in trust, and seconded their purpose to practically own the Bigelow Company business, and the testator had no reason to doubt that the Bigelow Company stock owned by the trust estate under his father's will would remain intact during his mother's lifetime. The testator was not a lawyer, and was only about 24 years of age when his father died. It does not appear that the person who drew his will knew the conditions of his father's will, or that the testator understood or considered the question of the power of his mother to dispose of the trust securities and the possibilities that might ensue if she chose to exercise her authority. As a matter of fact the mother, who died some five years after her son's death, had not parted with any of the Bigelow Company stock during her lifetime. This circumstance, while not of itself evidence of the testator's intention, is, however, confirmatory of the sentiment that continuously existed for many years, to keep the Bigelow Company stock in the family. To my mind, unless a narrow, strained meaning is given to the words "or be entitled to," the intention of the testator clearly was to include in the trust estate the Bigelow Company stock that was in his mother's custody as part of the trust estate of his father's will. The scheme of the tes-

tator seems to have been to create a trust which at the same time would keep intact the Bigelow Company stock in the interest of his brother and the latter's family, and provide an income for life for his wife from the stock of the company, of which he died absolutely possessed, and from such additional stock of the company to which he or his estate might be entitled upon his mother's death under the trust estate created by his father's will. The provision of a reversion to testator's wife of the principal of the trust estate in the event of the death of his brother before him leaving no issue is harmonious with this scheme, since in that contingency no person of his blood would then be in existence. So, too, the provisions which empowered a sale of the Bigelow Company stock would be consistent with this general scheme, inasmuch as it presupposes the consent of his brother, who was an executor and trustee under the will, who would only sell in case a situation arose when it was deemed desirable so to do. As no differences exist between the parties respecting the account of the plaintiff other than the question discussed in this opinion the account submitted will be approved and passed. The motion to strike out testimony relating to circumstances existing subsequent to the date of the execution of the will, which was taken subject to the objections of the defendant, will, for the reasons heretofore outlined, be denied, with appropriate exceptions to the defendant.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and HOTCHKISS, JJ.

E. H. Hatch, of New York City, for appellant.
S. P. Cahill, of New York City, for respondent.

PER CURIAM. Judgment affirmed, with costs, upon the opinion of Greenbaum, J., at Special Term. Order filed.

---

### PEOPLE v. GRIMALDI.

(Supreme Court, Appellate Division, Second Department. May 29, 1914.)

Appeal from Kings County Court.

John Grimaldi was convicted of carrying a dangerous weapon, and appeals. Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and RICH, JJ.

Edward J. Reilly, of Brooklyn, for appellant.
Edward A. Freshman, Asst. Dist. Atty., of Brooklyn (James C. Cropsey, Dist. Atty., and Harry G. Anderson, Asst. Dist. Atty., both of Brooklyn, on the brief), for the People.

PER CURIAM. Judgment of conviction of the County Court of Kings County affirmed.

THOMAS, J. (dissenting). The defendant was indicted for, and acquitted of, discharging a revolver at one Di Meo with intent to kill him. He has been convicted in this action of unlawfully carrying the revolver on the same day. The indictment and plea on the first trial presented the issuable facts: (1) Whether the defendant assaulted with a revolver; (2) if so, whether with intent to harm Di Meo. A negative answer to either inquiry demanded an acquittal, and to the second may have involved a finding of self-defense. On this trial there