In the Matter of the Intermediate Accounting of WILLIAM W. WEMPLE et al., as Executors of WILLIAM E. GILMOUR, Deceased, Respondents. JEAN G. SWERDLOFF et al., Appellants; MOHAWK NATIONAL BANK, as Trustee, Respondent.

Third Department, March 18, 1963.

*Leary, Fullerton, Ford & Aussicker* (*William L. Ford* of counsel), for Jean G. Swerdloff and another, appellants.

*Butler, Kilmer, Hoey & Grey* (*Theodore H. Grey* of counsel), for Grace W. Gilmour, appellant.

*Edward H. Gilhouse,* as special guardian, appellant in person.

*Wemple & Daly* (*Gerald T. Hennessy* of counsel), for executors, respondents.

*Borst, Smith, Benedict, O'Loughlin & Smith* (*James E. O'Loughlin* of counsel), for Mohawk National Bank, as trustee, respondent.

HERLIHY, J. The children of the decedent appeal from the method adopted by the Surrogate in computing the amount of the marital deduction trust, and from a charge against the principal of the estate's assets of certain maintenance and household expenses pursuant to paragraph " Eight " of the decedent's last will and testament.

The widow contends that the marital trust fund is entitled to share in the appreciation of security values from the date of the death of the decedent to the transfer of the corpus of the trust to the trustees.

It is apparent, as will hereinafter appear, that the decedent, in drafting his will, was so intent on taking full advantage of the maximum marital Federal tax deductions that he failed to

comprehend the possible inequities which might and did result therefrom.

I. As to the method of computing the marital deduction, paragraph " Three " of the will, so far as pertinent, provides: " * * * [A]n *amount* equal to the difference between: (a) One-half (½) of the value of my adjusted gross estate; and (b) the value of all property passing to my said wife under any other article or articles of this, my Will, or otherwise, and with respect to which a marital deduction is allowable to my estate under the provisions of the United States Internal Revenue Code, Section 2056; * * * As used in this article of my Will:

" (a) ' My adjusted gross estate ' means my adjusted gross estate as defined in Section 2056 of the Internal Revenue Code (or in such other statutory provision as shall correspond thereto at the time of my death);

" (b) The references to ' the value of my adjusted gross estate ' and to ' the value of property passing to my said wife ' mean, in each case, the value thereof as *finally* determined for the purpose of fixing the Federal Estate Tax on my estate; and,

" (c) ' Marital deduction ' means the marital deduction provided for in said Section 2056.

" It is my *intention* to obtain the maximum marital deduction allowable to my estate under the provisions of Section 2056, and the provisions of this, my Will, shall be construed so as to give full effect to my said intention." (Emphasis supplied.)

The Surrogate followed this language precisely and decided that as *finally determined* by the Federal tax authorities, the *adjusted gross estate* amounted to $1,036,959.16 and that the fixed amount of the *maximum marital deduction* was $518,479.58 (one half of the adjusted gross estate). There was deducted therefrom $32,000, assets passing outside of the trust to the widow and not pertinent to the issues herein. After deduction of the amount payable to the marital trust and the payment of all other charges, there remained a balance of $99,090.18 which constituted the *rest, residue and remainder* of the decedent's estate for the establishment of separate trusts for his two children.

This apparently inequitable result was due to the following adjustments made by the Internal Revenue Service at the time of the final audit fixing the Federal estate tax:

(a) The decedent within three years prior to his death made transfers to his children valued at $155,883.12, and upon audit of the estate tax return, the transfers were found to have been

made in contemplation of death, and accordingly that amount was added to the gross estate as computed by the executors and the adjusted gross estate for tax purposes was enlarged by that amount.

(b) From the total amount claimed for funeral and administration expenses there was disallowed $80,618.91.

(c) Under the schedule of debts of the decedent [$628,756.23], which included personal income tax assessments, the Internal Revenue Service disallowed therefrom the sum of $183,509.75 as it did not appear "from the evidence on file that they represented obligations incurred for an adequate and full consideration in money or money's worth".

These figures total $420,011.78, which together with other charges, not necessary to be enumerated, account for the substantial variation between the amount of the marital deduction trust fund and the residuary amount for the establishment of the children's trusts.

While it might be argued that these tax allowances and charges were not anticipated and ordinarily not to be expected, where a testator elects to use a definitive tax formula as the dispositive control for the distribution of the assets of his estate, he assumes whatever inherent risk may attach to the strict interpretation given to his intended and elected formula.

In the interpretation of a will, the intention of the testator, as gathered from the language of the will, is, of course, controlling. (*Bigelow* v. *Percival,* 162 App. Div. 831.) The fact that events happened subsequent to the probate of a will which were not foreseen by the testator cannot change the meaning of the language used. "When the purpose of a testator is reasonably clear by reading his words in their natural and common sense, the courts have not the right to annul or pervert that purpose upon the ground that a consequence of it might not have been thought of or intended by him." (*Matter of Tamargo,* 220 N. Y. 225, 228.) "[W]e cannot make a new will or build up a scheme for the purpose of carrying out what might be thought was or would be in accordance with his wishes." (*Tilden* v. *Green,* 130 N. Y. 29, 51.)

*Matter of Inman* (22 Misc 2d 573) is strikingly similar to this case where the testator therein directed that the marital trust be based upon the "adjusted gross estate". The Surrogate decided that the trust in the will had to be given the operative effect that the testator intended, namely, that the marital trust be fixed in an amount equal to one half of the adjusted gross estate determined for tax purposes.

The executors rely upon *Matter of Walsh* (14 Misc 2d 1012, affd. 8 A D 2d 831) where the value of the gifts were deducted from the trust, but the distinguishing feature in that case is that the *inter vivos* gifts were made to the wife and not, as here, to the children.

Here, the testator probably did not foresee that the *finally determined* adjusted gross estate would be so inflated but his resorting to such drastic and unequivocal language in expressing his *intention* to obtain the *maximum marital deduction* prevents the granting of any relief.

II. The expenses of maintenance of the house, as provided in paragraph " Eight " of the will, should be charged to income rather than principal assets.

Paragraph " Eight " of the will provided that the widow might remain in the house for " two (2) years, without any rent or charge for occupancy, and that all taxes, assessments * * * and normal upkeep * * * shall be borne by my estate * * * and not charged specifically against the interest which I have given to my said wife."

The Surrogate decided it was the intention of the testator that these expenses should be charged to principal rather than income. The general rule provides that carrying charges on nonproductive real property are payable from income in the absence of a contrary intent in the will. (*Matter of Albertson,* 113 N. Y. 434, 439; *Spencer v. Spencer,* 219 N. Y. 459, 465; *Matter of Satterwhite,* 262 N. Y. 339; *Matter of Kazanjian,* 53 N. Y. S. 2d 275.)

From a reading of the present will, it is apparent that the intention of the testator was not contrary to the general rule and accordingly we determine that the expenses of maintenance (approximately $9,449.08) should be charged to income assets.

III. The widow contends that the marital trust should share in the appreciation of security values from the date of death to the transfer of the corpus of the trust to the trustees.

In the third decretal paragraph (subd. 2) of the decree, the Surrogate determined " the marital deduction trust shall not share in any increment from securities sold ", and we concur that such an allocation is equitable and fulfills the apparent intent of the testator.

In this particular will, paragraph " Three ", which established the marital trust, created a specific dollar amount. It provided " an *amount* equal to the difference between ". (Italics added.)

This wording differs from the language in *Matter of Ossman* (27 Misc 2d 632, 633) where the will provided " one half of the

*value* of my adjusted gross estate " and where the Surrogate interpreted the wording to signify " a one-half part·or percentage rather than an amount or pecuniary bequest ". The court observed (p. 633):

" There are two distinct types of marital deduction formulæ popularly employed in drafting wills. As stated in Revenue Ruling 60–87, Mertens Law of Federal Income Taxation,

" ' [A] marital deduction trust of a pecuniary formula type provides for a trust fund in a fixed and definite amount, once the value of the adjusted gross estate is finally determined, which amount is unaffected by any appreciation or depreciation in value of assets comprising the estate.

" ' The difference is that under a pecuniary formula clause the trust will receive assets of a fixed and definite amount at the time of distribution, whereas under the residuary formula clause the percentage or fraction will be applied for the purpose of distribution of the residuary estate as constituted at the time of distribution. Therefore, under a residuary formula clause, the trust will share in appreciation and depreciation of the value of the estate, which is not the case under a pecuniary formula clause.' " (See Casner, Estate Planning [2d ed.], pp. 640–642; 3 Rabkin and Johnson, Current Legal Forms with Tax Analysis, pp. 104a–104c. *Matter of Mueller,* 34 Misc 2d 584, is likewise distinguishable.)

This distinction is a narrow one, but we determine that according to the terms of this will, it was the intent of the decedent Gilmour to give a *fixed amount* to his widow and " all the rest, residue and remainder " to his children. Thus, the widow is not entitled to share in the appreciation of security values from the date of his death to the date of distribution. (*Matter of Gauff,* 27 Misc 2d 407, 409.)

The attorneys for the decedent's children contend that their request for an adjournment should have been granted. The record shows that the learned Surrogate directed the taking of testimony, but if it appeared an adjournment was necessary to protect the interests of any of the parties, it could then be considered. At the close of the testimony all of the parties rested without renewing the motion for an adjournment and, under such circumstances, the parties are not entitled to the relief sought.

The decree appealed from should be modified by directing that the expenses for the maintenance of the home be charged to income and as so modified, in all other respects affirmed.

BERGAN, P. J., COON, GIBSON and TAYLOR, JJ., concur.

Decree appealed from modified by directing that the expenses for the maintenance of the home be charged to income and as so modified, in all other respects affirmed, with costs to all parties who have filed briefs in this court payable from the estate.