In the Matter of the Accounting of BANKERS TRUST COMPANY, as Trustee of an Express Trust Executed by JOHN C. EPPING, Appellant-Respondent.

GEORGE McKINLEY, as Guardian ad Litem for LORRAINE C. ARNOLD, Appellant-Respondent; ELLA EPPING, Respondent-Appellant; GLEN W. WATKINS, as Guardian ad Litem for CLAIRE E. ARNOLD, Respondent.

First Department, March 26, 1968.

*George McKinley,* guardian ad litem for Lorraine C. Arnold, appellant-respondent in person.

*Arthur E. Sullivan* of counsel (*Lark & Sullivan,* attorneys), for Bankers Trust Company, appellant-respondent.

*Miriam C. Feigelson* of counsel (*Stephen R. Lang* with him on the brief; *Breed, Abbott & Morgan,* attorneys), for Ella Epping, respondent-appellant.

*Glen W. Watkins,* guardian ad litem for Claire E. Arnold, respondent in person.

STEVENS, J. P. These are appeals by the trustee, Bankers Trust Company, and by George McKinley, one of the guardians ad litem, from a judgment entered June 30, 1967, in the first and final accounting by Bankers of Trust No. 4, and also an appeal by Ella Epping, the widow of the donor of the trust, from so much of that judgment as overruled her objection No. 7 to the computation of commissions of the trustee in Trust No. 4.

On September 23, 1955 John C. Epping created four separate trusts and named Bankers Trust Company as the trustee of each. The trusts were designated 1, 2, 3 and 4. The present appeal, as indicated, involves Trust No. 4, of which Epping was first life income beneficiary. Trust No. 4 was amended by an instrument dated October 18, 1960. As expressly stated the primary concern of the donor in creating this trust was for income beneficiaries. Epping, who was the only income beneficiary, died December 3, 1961, a resident of Florida, leaving a last will and testament, which was admitted to probate in Florida, and letters testamentary issued to Ella Epping as executrix.

This proceeding is the first and final account of Trust No. 4 by Bankers as trustee thereof. Ella Epping filed certain objections to such account. In particular Ella Epping claimed that her interest in the trust remainder as provided for in paragraph 2 of subdivision D of article First was a fractional portion of the trust remainder. Accordingly, Epping claims she is entitled

to share in the appreciation in value of the estate's assets. Special Term agreed with this contention of Ella Epping. Bankers Trust and McKinley, the guardian ad litem for Lorraine Charlotte Arnold, appeal from such determination. Ella Epping also objected that trustee commissions should be computed at the rates presently in effect for currently executed trusts. Special Term rejected this contention, and Ella Epping appeals from so much of the judgment as overruled her objection.

The primary issue involved in this appeal is whether under the provisions of paragraph 2 of subdivision D of article First Ella Epping is to receive a fractional share of the trust principal or a gift of a fixed dollar amount. Lesser questions involve the rate at which the trustee's commissions shall be computed, and whether and in what amount, if any, a second guardian ad litem appointed for Claire Elizabeth Arnold shall be compensated.

Pertinent provisions of the trust to which attention should be especially directed follow.

Paragraph 2 of subdivision D of article First reads as follows: "The Trustee is further directed to pay over absolutely, unto the said Ella Epping, in addition to the foregoing payments, such additional sum or sums which, when added to the value of all gifts, bequests, rights and interests qualifying for marital deduction purposes, taken in conjunction with the value of the assets passing, to her under the terms of this Trust, the Trust known as the John C. Epping Trust No. 1, and under the Donor's Will, will equal the maximum marital deduction allowable in computing the valuation of the Donor's net taxable estate under the provisions of the Federal Estate Tax Law in effect upon the Donor's death, which shall be computed as though the Donor's entire taxable estate passed to the Donor's wife, and the valuation shall be that figure as finally determined for purposes of the Federal Estate Tax for the Donor's Estate; provided, further, that this shall be so computed whether or not the Executrix or Executor of the Donor's Will may elect to have a valuation of his gross estate pursuant to Section 2032 of the Internal Revenue Code of 1954 as may be then in effect (or pursuant to any statutory provision of the same general nature that shall be applicable to his estate). The Trustee is directed to make this payment from funds against which no deduction shall have been made for any debts, taxes or expenses as authorized and directed under Paragraph ' C ' herein above."

Article Seventh reads, in part, as follows: "Bankers Trust Company shall receive, without judicial authorization, the commissions allowed on principal and income by the laws of the

State of New York to a sole testamentary trustee computed in the manner and at the rates in effect at the time such compensation shall be payable."

It was provided in article Tenth that questions pertaining to the "validity, construction and administration" of the trust would be governed by the laws of the State of New York.

Under subdivision 10 of article Third the trustee is empowered to "make any division or distribution required * * * in cash or in other property, real or personal, or undivided interests therein, or partly in cash and partly in property." The language quoted refers to distribution and not valuation.

The contention of Ella Epping that trustee commissions should be computed at current rates seems to be premised upon her claim that a new trust was created in 1960. Examination of the instrument dated October 18, 1960 reveals that the donor was merely exercising a right reserved by him in article Eighth of the instrument of September 23, 1955 to alter and modify "*in partem* the same." In the stated interest of clarification and simplification the parties adopted a single instrument to embody the present and new terms of the deed of trust. Moreover, the instrument of October 18, 1960, is termed "corrected Deed of Trust" and referred to expenses of the four trusts created at the time of this trust's execution. Special Term correctly held the trust was created in 1955 and merely amended in 1960. Accordingly, the commissions were properly calculated under former section 285-a of the Surrogate's Court Act (now SCPA 2308) for trusts executed *before* August 31, 1965 (emphasis supplied).

Under the facts of this case as revealed in the record we conclude the appointment of a separate guardian ad litem for the additional child was not warranted. Such appointment, minimally, was an improvident exercise of discretion, should be stricken, and the appointment revoked. There appears no sound reason why the appointment of George McKinley, guardian ad litem for Lorraine Charlotte Arnold, should not have been extended to Claire Elizabeth Arnold, her after-born sister, if an additional guardian were deemed necessary. The interests of the infants were identical and such interests were being adequately protected (*Matter of Legget,* 25 A D 2d 727; *Matter of Beyer,* 21 A D 2d 152).

Turning now to the paramount issue posed by the language of paragraph 2 of subdivision D of article First, it is concluded that such language should be construed as making a pecuniary gift, and not as giving a fractional share to the widow. Here, as in every instance involving construction of the language of

a trust, the object is to ascertain and, where possible, give effect to the intention of the donor. The donor in the instrument stated his primary concern to be with the income beneficiaries. Since he was the sole life income beneficiary his primary concern in Trust No. 4 was to benefit himself. In fact the donor was the first life income beneficiary of each of the four trusts. The donor's wife, Ella Epping, was the second life income beneficiary of Trust No. 1, his daughter Franc Dorothy Epping the second life income beneficiary of Trust No. 2, and his other daughter Joanna E. Arnold the second life income beneficiary of Trust No. 3.

Under the language of paragraph 1 of subdivision D of article First the trustee, upon the death of the donor, was directed to pay over to donor's wife, Ella Epping, "the sum of Thirty Thousand ($30,000) Dollars", if she survived the donor. Paragraphs 3, 4, 5 and 6 of subdivision D of article First directed that specified sums of money be paid to designated beneficiaries. Paragraph 7 provided for disposition of the "balance" of funds remaining, if any, "after payment of the legacies and the debts, administration expenses and taxes as authorized in Article 'First', Paragraphs D and C above".

Under paragraph 2 of subdivision D, the donor sought to achieve the maximum marital deduction allowable in computing the valuation of his net taxable estate under the Federal Estate Tax Law. To that end the trustee was directed to "pay over" to donor's wife, in addition to payments previously directed, "such additional *sum* or *sums* which, when added to the value of all gifts, bequests, rights and interests qualifying for marital deduction purposes, taken in conjunction with the value of the assets * * * of this Trust" [No. 4] and Trust No. 1, would equal such maximum marital deduction (emphasis supplied). Additionally, donor directed the trustee "to make *this payment* from funds against which no deduction shall have been made" for enumerated purposes. (Emphasis supplied.) The tenor of the language quoted points to the intention of making a pecuniary gift in a fixed dollar amount to be calculated by taking into consideration certain named factors and not to make a gift of a fractional portion of the trust remainder. Additionally the position of paragraph 2 of subdivision D, in the general scheme of distribution set forth under subdivision D of article First is that among a series of dollar gifts. Only in paragraph 7 of subdivision D does the donor refer to "the balance", "equal parts" and language reasonably susceptible of fractional intent.

*Matter of Bush* (2 A D 2d 526, affd. without opn. 3 N Y 2d 908) upon which the widow places great reliance, is not applicable here to determine whether a pecuniary or fractional gift was intended. The court there held (p. 527), since the executor was given power to distribute " *in kind* * * * any of the securities or investments forming part of my estate *at the appraised values* thereof ", that the testatrix intended the values of assets distributed in kind to be appraised as of the date of death, and not as of the date of distribution. (Emphasis supplied.) In fact the property was appraised at date-of-death values for estate tax purposes. Additionally, the husband was given property or moneys as would equal " one-half of my adjusted gross estate " (p. 528). The entire language in *Matter of Bush* indicated the intention to give a fractional as distinguished from a fixed interest (see *Matter of Mueller,* 34 Misc 2d 584; *Matter of Bing,* 23 Misc 2d 326). On the other hand words such as " sum " (*Matter of Gauff,* 27 Misc 2d 407) and " amount " (*Matter of Gilmour,* 18 A D 2d 154) have been held to indicate a marital deduction of a pecuniary formula type. Where it is concluded, as here, that it was the intention of the donor or testator to make a pecuniary as distinguished from a fractional or percentage gift, the beneficiary does not share in the appreciation or depreciation of the value of the estate.

The general scheme and objectives of the donor in simultaneously setting up four trusts should not be overlooked. Thereby he provided for each of the objects of his natural bounty. His two daughters were each provided for by trusts, and this fact was noted in his will. His wife was provided for by a separate trust. In Trust No. 4, the one under consideration, his interest as life income beneficiary was of primary concern. Upon his death he sought to achieve for his widow the maximum marital deduction allowable. To that end she was to receive such additional " sum or sums " as would provide the desired result. The directions therefor were contained in a pre-residuary paragraph. Any " balance " remaining (following upon the payment of specific gifts in fixed dollar amounts and payment of taxes, debts, and administration expenses) was to be disposed of in accordance with directions contained in paragraph 7 of subdivision D of article First. Contrasting the language of paragraph 2 of subdivision D of article First and that of paragraph 7 of subdivision D of article First makes more evident the intention of the donor that his widow should receive a fixed dollar amount. Had the value of his estate diminished his widow would still have received the sum or sums necessary to provide

the maximum marital deduction and his daughters, under paragraph 7 of subdivision D would have failed to benefit or received reduced benefits. That the assets increased in value will not serve to change that fact or alter the donor's evident intention, which is controlling (*Bigelow* v. *Percival*, 162 App. Div. 831). "That is certain which can be made certain or reduced to a certainty", and no unusual or peculiar problem prevents ascertainment of the additional sum or sums necessary to effect the authorized payment (cf. *Matter of Lewine*, 55 Misc 2d 734).

Since the trust instrument does not mention or direct the values to be used for distribution purposes, though it does authorize a distribution in kind (art. Third, subd. 10) the provisions of the statute apply and the assets used in making payment are to be valued at their respective values as of the date of distribution (EPTL, 2–1.9, subd. [b], par. [1]). The reference to "valuation" in paragraph 2 of subdivision D of article First is for tax and not distribution purposes (see *Matter of Umpleby*, 43 Misc 2d 932). Nor is there here any direction as there was in *Matter of McDonnell* (45 Misc 2d 57) that the assets in kind be distributed at death values or at the value fixed in the tax proceeding "whichever is lower." The court there found such language was some evidence of concern for testator's widow who was protected against depreciation and entitled to share in any appreciation of assets.

Accordingly, the judgment (denominated an order) appealed from should be modified on the law, the facts and in the exercise of discretion to approve the trustee's first and final account as originally filed to overrule the objections 1 and 2 of Ella Epping, also modify the second ordering paragraph to declare she is entitled to a pecuniary gift under paragraph 2 of subdivision D of article First, of the trust, and sustain the objections to the appointment of the guardian ad litem for Claire Elizabeth Arnold, strike such appointment, and the direction for payment for services rendered in connection with such appointment. As so modified, the judgment (denominated an order) so appealed from should be otherwise affirmed, with costs to all parties filing briefs, payable out of the estate.

McGivern, J. (dissenting). I dissent and would affirm the holding of Special Term to the effect that Epping Trust No. 4 gave to the respondent widow a "fractional share" of the trust property.

As the court observed in *Matter of Lewine* (55 Misc 2d 734), the cases indicate no little ingenuity has been exercised in endeavoring to insulate the estate of a surviving spouse from

fluctuations of the securities market. And it is true that in deciding whether the testator's intent was to be "fractional" or "pecuniary", in many cases a feather could tip the balance. In Epping Trust No. 4 herein, I think the balance tips in favor of the surviving widow.

Surveying the trust instrument from four corners, the donor's plan, not unnaturally, was to favor his widow and to assure that she receive the maximum amount on distribution. The other objects of his natural bounty were provided for in separate trusts. It is significantly directed in subdivision C of article First that the entire corpus of Trust No. 4 be treated "as though it were the residuary portion of the Donor's estate." Paragraph 2 of subdivision D of article First provided that the marital deduction share "shall be computed as though the Donor's entire taxable estate passed to the Donor's wife". The provisions for the widow in paragraphs 1 and 2 of subdivision D of article First come ahead of all others in numerical priority. Furthermore, the donor named his wife as executrix of his testamentary estate, with attendant powers affecting the valuation date of the gross estate, the exercise of which could derogate from the interest of the other beneficiaries, to her advantage.

Accordingly, I do not perceive in the whole instrument any clear intent that the ultimate size of the widow's estate be diminished by a finding that she be awarded a fixed sum and be frustrated from sharing in any appreciation in the value of the estate assets. To the contrary, it is my view that the widow was intended and is entitled to have a fractional share.

To the foregoing extent, I agree with Special Term.

EAGER and BASTOW, JJ., concur with STEVENS, J. P.; McGIVERN, J., dissents in opinion in which TILZER, J., concurs.

Judgment modified on the law, the facts and in the exercise of discretion, to the extent of approving the trustee's first and final account as originally filed to overrule objections 1 and 2 of respondent-respondent-appellant; modifying the second ordering paragraph to declare she is entitled to a pecuniary gift under paragraph 2 of subdivision D of article First of the trust; and sustaining the objections to the appointment of the guardian ad litem for Claire Elizabeth Arnold, striking such appointment, and the direction for payment for services rendered in connection with such appointment, and, as so modified, affirmed, with $50 costs and disbursements to all parties filing briefs, payable out of the estate.