■ In the Matter of the Estate of TERESE LASSER, Deceased. BOBBI GRAY, Appellant; ALAN LASSER et al., Respondents-Appellants; LEE GRAY, Objectant-Respondent.—In a proceeding for the judicial settlement of an executrix's account, the

petitioner executrix Bobbi Gray and Alan Lasser, Betsy Lasser Stone and Cindy Lasser Sears separately appeal, as limited by their briefs, from so much of an order of the Surrogate's Court, Westchester County (Brewster, S.), dated September 23, 1985, as denied that branch of the motion of the petitioner joined in by the appellants Alan Lasser, Betsy Lasser Stone and Cindy Lasser Sears which was to dismiss objection number one of the legatee Lee Gray.

Ordered that the order is reversed insofar as appealed from on the law, without costs or disbursements, and that branch of the petitioner's motion which was to dismiss objection number one of the legatee Lee Gray is granted.

The last will and testament of Jacob K. Lasser, dated September 1, 1953, included a pecuniary-formula, maximum-marital deduction bequest to his wife Terese Lasser. Specifically, Mr. Lasser, in his will, provided that the amount of this bequest to his wife would be "the difference between one-half of the value of my adjusted gross estate, and the value of all property passing to my said wife under this Will or otherwise, and with respect to which a marital deduction is allowable to my estate under the provisions of the United States Internal Revenue Code". The term "adjusted gross estate" was defined with reference to the United States Internal Revenue Code of 1939 former § 812 (e) (now 26 USC § 2056). The expressed intent of Mr. Lasser in having this provision drafted in this manner was to obtain the maximum marital deduction allowable in connection with the Federal taxation of his estate. Mr. Lasser also directed that the remainder of his estate assets be placed in a trust, with the income of such trust to be payable to his wife for her life, and with the principal of such trust to thereafter be paid, in equal shares, to Mr. Lasser's children, Donald Judd Lasser and the petitioner.

The record establishes that although Mr. Lasser died in 1954, his estate was never settled. Terese Lasser, who was named as an executrix of her husband's estate, never made any distributions to herself, and never funded the trusts which had been set up under the will of Mr. Lasser of which she was the income beneficiary, and of which her children were the remaindermen. One of her children, Donald Judd Lasser, predeceased her, survived by his children, the appellants Alan Lasser, Betsy Lasser Stone and Cindy Lasser Sears. Terese Lasser died in 1979.

In her will, Terese Lasser made a specific bequest of "all the shares of stock owned by me at my death in Business Reports,

Inc., a New York corporation * * * to my son-in-law, Lee Gray, provided he survives me". The petitioner, the executrix of Terese Lasser's estate, filed an accounting on October 4, 1984. In this proceeding to settle the account of the executrix of Terese Lasser's estate, it is alleged that the foregoing specific bequest had "abated", since, at the time of her death, Terese Lasser did not own any shares of Business Reports, Inc. The record, in fact, establishes conclusively that, at the time of Terese Lasser's death in 1979, the subject shares of stock were not owned by her, but were instead owned by the estate of Mr. Lasser, which, as noted above, was still in administration. That these shares were owned by the estate of Mr. Lasser was, in fact, already determined in a separate judicial proceeding before the Surrogate of New York County, which determination was affirmed by the Appellate Division, First Department (see, Matter of Lasser, 103 AD2d 1050). The identical issue therefore has been determined in a prior judicial proceeding in which all parties concerned had a full and fair opportunity to litigate, so that the doctrine of collateral estoppel applies.

On November 5, 1984, Lee Gray filed certain objections, in the first of which he alleged that "[t]he estate of Terese Lasser is entitled to said (30) BRI shares by virtue of a pecuniary marital deduction bequest to decedent contained in her husband's will". In other words, Mr. Gray's argument in the Surrogate's Court, and now on appeal, is that a certain sum ought to pass from the estate of Mr. Lasser to the estate of Terese Lasser by operation of the marital deduction bequest in Mr. Lasser's will. Mr. Gray also alleges that such a bequest could only be satisfied by a distribution of all of the subject shares of stock currently owned by Mr. Lasser's estate and that such shares would then pass to him (Gray) pursuant to the specific bequest in Terese Lasser's will. For the reasons that follow, we disagree with this argument.

The will of Mr. Lasser established a pecuniary, as opposed to a fractional, formula for determining the amount of the marital deduction bequest. It is undisputed that, since the value of assets which passed to Terese Lasser upon the death of Mr. Lasser through nontestamentary channels exceeded one half of the amount of Mr. Lasser's adjusted gross estate, as set forth in the estate's tax return, the amount due to Mrs. Lasser under the pecuniary formula in Mr. Lasser's will was zero. However, Mr. Gray contends that, contrary to the terms of Mr. Lasser's will, the amount of the marital bequest must be computed with reference not to the amount of Mr. Lasser's

actual adjusted gross estate, but rather, with reference to the much higher amount that would comprise the value of his adjusted gross estate if it were calculated today, more than 30 years after his death.

The argument is without merit. Under a pecuniary marital deduction bequest, a surviving spouse is said to share in the appreciation of an estate's assets where the executor chooses to satisfy the marital bequest by distributing assets which have appreciated in value since the date of the testator's death and before distribution. If the executor values such assets as of the date of death, then the actual value of what is distributed to the surviving spouse is greater than the amount of the bequest, so that the spouse can be said to have shared in the appreciation of the estate's assets (see generally, Matter of Bush, 2 AD2d 526, affd 3 NY2d 908; Matter of Epping, 29 AD2d 410, affd 23 NY2d 980; Matter of Gilmour, 18 AD2d 154; Matter of Goutmanovitch, 105 Misc 2d 851; Matter of Leonard, 45 Misc 2d 534; Matter of McDonnell, 45 Misc 2d 57; Matter of Umpleby, 43 Misc 2d 932; Matter of Gauff, 27 Misc 2d 407; see also, EPTL 2-1.9; Rohan, Practice Commentary, McKinney's Cons Laws of NY, Book 17B, EPTL 2-1.9). The apparent appreciation in the surviving spouse's bequest is a function of the postmortem and predistribution appreciation in the value of assets chosen by the fiduciary to satisfy the marital deduction bequest; the actual amount of the bequest, however, stays constant.

Thus, what is essentially the only argument advanced by Mr. Gray is devoid of merit. Mr. Gray has not raised any triable issue with respect, for example, to the question of whether, in fact, the amount of one half of Mr. Lasser's adjusted gross estate (as computed for estate tax purposes) was less than the value of the nontestamentary property which passed to Terese Lasser on account of Mr. Lasser's death. Thus, Mr. Gray has failed to raise any issue of fact as to whether, under the pecuniary formula set forth in Mr. Lasser's will, the amount bequeathed to Terese Lasser was indeed zero. We do not agree with the Surrogate that summary judgment is inappropriate because this issue of fact will, or should be, determined in connection with the proceeding being held in New York County in connection with Mr. Lasser's estate. Since no issue of fact has been raised in this record, there is no impediment to granting summary judgment (see generally, Matter of Pollock, 64 NY2d 1156; Matter of Pascal, 309 NY 108). Mangano, J. P., Bracken, Brown and Spatt, JJ., concur.