No. 45,382

In the Matter of the Estate of Laura M. Graves, Deceased; HARLAN L. GRAVES, Individually and Executor of the Estate of Laura M. Graves, Deceased, *Appellant,* v. MARY FAYE HOLLAND and GENA M. HILDINGER, *Appellees.*

(457 P. 2d 71)

Opinion filed July 17, 1969.

*R. R. Mitchell,* of Dodge City, argued the cause, and *A. L. Moffat,* of

Kinsley, and *Don C. Smith* and *David L. Patton,* both of Dodge City, were with him on the brief for the appellant.

*Steve W. Church,* of Greensburg, argued the cause and was on the brief for Gena M. Hildinger, appellee.

*John M. Wall,* of Sedan, argued the cause and was on the brief for Mary Faye Holland, appellee.

The opinion of the court was delivered by

HATCHER, C.: This controversy stems from written defenses filed against the executor's petition for final settlement disputing the executor's interpretation of the language of a will.

Laura M. Graves died testate, a resident of Kiowa County, Kansas, November 9, 1965. Her last will and testament was dated July 11, 1955. Due to the specific nature of the controversy we find it necessary to present most of the terms of the will in full. It reads:

"FIRST. I direct that all my just debts, funeral and testamentary expenses, and all transfer, inheritance, legacy, estate or succession taxes, dues or charges, which may be payable on or in respect of any legacy, devise or bequest in this will contained, under any law of the United States of the State or Kansas, which shall be in force at the time of my death, shall be paid by my executor hereinafter named.

"SECOND. I will and devise to my son, Harlan L. Graves, the following described real property situate in the county of Kiowa, and State of Kansas, to wit:

"The North half (N/2) of Section Six (6) in Township Twenty-Nine (29) South, of Range Eighteen (18) West of the 6th P. M.

together with my interest in the farm machinery and equipment belonging to said farm. To Have and To Hold, forever.

"THIRD. I will and devise to my daughter, Mary Faye Holland, the following described real property situate in the county of Kiowa and State of Kansas, to wit:

"The South half (S/2) of Section Six (6) in Township Twenty-nine (29) South, of Range Eighteen (18) West of the 6th P. M.

To Have and To Hold, forever.

"FOURTH. For the express purpose of this will, I direct that the probate court of Kiowa County, Kansas, shall appoint three commissioners, disinterested persons, to make personal view and to appraise at its true value in money, the real property hereinbefore devised in the second and third paragraphs of this will, . . . and when such appraisement has been made by said commissioners that it be reduced to writing and returned to the probate court of Kiowa County, Kansas.

"FIFTH. From my personal estate I will and bequeath to my daughter, Gena M. Hildinger, property or money equal to one-half (½) of the appraised value of the land hereinbefore described, and this bequest shall be satisfied in the following manner: I have heretofore sold to Clay M. Hildinger and J. D. Baer

my interest in the partnership of Graves Lumber and Hardware Company; if at the time of my death the notes evidencing the purchase price and secured by said contract have not been fully paid then I direct that my executor shall transfer and set over to my daughter, Gena M. Hildinger, such a portion of the unpaid notes as shall equal one-half of the appraised value of the section of land above described, and if the unpaid balance of the notes shall not be sufficient to equal one-half of the appraised value of said land then the remainder of value shall be paid in cash to the said Gena M. Hildinger, by my executor.

"SIXTH. In the event that the appraisement hereinbefore provided for shall establish a difference in the valuation of the lands devised to my son Harlan L. Graves, and to my daughter Mary Faye Holland, then I direct that my executor shall equalize, in cash, the difference in the values of the land as so determined by said appraisement.

"SEVENTH. [The residue was left equally to the three beneficiaries.]

"EIGHTH. [Harlan L. Graves was appointed executor.]

"NINTH. It is my will and I direct that my executor shall have full power and authority to sell any part or portion of my estate not expressly devised or bequeathed by this will, as he may deem necessary, and he is authorized to make and deliver good and sufficient deeds or instruments of transfer therefor."

The will was duly admitted to probate on December 6, 1965, and Harlan L. Graves was granted letters testamentary. On January 27, 1966, the three appraisers appointed by the probate court returned the inventory and appraisal, valuing the two half sections of land at $44,800.00 each. The balance due on the Hildinger note was shown as $36,600.00.

Gena M. Hildinger filed a petition to appoint three commissioners to appraise the two half sections of land as provided by the will. These commissioners were appointed and on May 23, 1967, they made their return valuing the two half sections at $72,000.00 each.

The petition for final settlement was filed in due time setting forth the above facts and alleged that after the payment of debts, taxes and expenses of administration the money and property remaining was insufficient to equalize the difference between the unpaid balance of the note and one-half the value of the land. The petition prayed that the two half sections of land be assigned to Harlan L. Graves and Mary Faye Holland, free and clear of any claim of Gena M. Hildinger, and that whatever cash and personal property remained after payment of court costs and expenses of administration be set over to Gena M. Hildinger toward the balance due on her legacy.

At the time of the filing of the petition for final settlement it definitely appeared that after the payment of expenses, inheritance and succession taxes there would be no cash from personal property

to add to the Hildinger note and so raise Gena M. Hildinger's bequest to equal one-half of the value of the land.

Gena M. Hildinger and Mary Faye Holland filed written defenses to the petition for final settlement. Their contention, stated generally, would require the executor to apply all cash from personal property to Gena's bequest to make it equal to one-half the value of the real estate and charge the debts, expenses and taxes against the three bequests.

The controversy was transferred to the district court for determination and it concluded:

"That applying the rules of construction, the Court concludes from the reading of the entire Will, that it was the intent of Laura M. Graves that each of her three children should receive property from her estate of equal value, with the exception of the farm machinery and equipment bequeathed to Harlan L. Graves.

"That Harlan L. Graves should receive the North Half of Section 6, Township 29 South, Range 18 West and the farm machinery and equipment; that Mary Faye Holland should receive the South Half of Section 6, Township 29 South, Range 18 West.

"That Gena M. Hildinger should receive the note of Clay M. Hildinger having a value of $36,600.00 and in addition should receive cash to equalize the value of property received by Harlan L. Graves and Mary Faye Holland.

"That there was property other than the two half sections sufficient to equalize the values in accordance with the intention of the testatrix but not sufficient property remaining after such equalization to pay the debts, taxes, administration expenses and any other just charges against said estate.

"That in order to carry out the intention of the testatrix for equalization, and to apply the deficiency required to pay the debts, taxes, administration expenses and other charges, one-third of such deficiency should be deducted from the money which would otherwise be paid to the said Gena M. Hildinger and one-third should be a charge against the real property devised to Harlan L. Graves and one-third should be a charge against the real property devised to Mary Faye Holland, and such charges should be declared liens on such property.

"That the said Harlan L. Graves and Mary Faye Holland should pay into said estate a sufficient amount to satisfy the charges against their respective property and, upon failure to make such contribution, the executor of said estate should be required to take whatever action is necessary to enforce the equalization of the amount due from the said Harlan L. Graves and Mary Faye Holland."

The executor has appealed. The basis of his contention is that the intention of the testatrix being clearly and unequivocally expressed in the will the trial court erred in applying the rules of judicial construction and in holding that the bequest to Gena M. Hildinger was a charge against the real property devised to Harlan L. Graves and Mary Faye Holland.

With the preliminary drudgery out of the way we may proceed to discuss the controlling features of this controversy.

We should first give attention to the trial court's attempt to equalize the bequest to Gena M. Hildinger with the bequest of land to her brother and sister by charging the specific bequests with the payment of debts, succession taxes and administration expenses, leaving the balance of cash to be applied on the bequest to Gena.

We find nothing in either the will or the statutes which supports the action of the court in charging such items against the specific bequests.

Paragraph First of the will directed that all just debts, funeral and testamentary expenses, and all transfer, inheritance or succession taxes shall be paid by the executor. There is no mention of the source of funds from which they shall be paid. The statute controlling the question (K. S. A. 59-1405) provides:

"The property of a decedent, except as provided in sections 19 [59-401] and 21 [59-403], shall be liable for the payment of his debts and other lawful demands against his estate. When a will designates the property to be appropriated for the payment of debts or other items, it shall be applied to such purpose. Unless the will provides otherwise for the payment thereof, the property of the testator, subject to the payment of debts and other items, shall be applied to that purpose in the following order:

"(1) Personal property not disposed of by will;

"(2) real estate not disposed of by will;

"(3) personal property bequeathed to the residuary legatee;

"(4) real estate devised to the residuary devisee;

"(5) property not specifically bequeathed or devised;

"(6) property specifically bequeathed or devised.

"Demonstrative legacies shall be classed as specific legacies to the extent of the payment thereof from the fund or property out of which payment is to be made, and as general legacies upon failure or insufficiency of the fund or property out of which payment was to be made to the extent of such insufficiency. The property of each class shall be exhausted before resorting to that of the next class; and all of one class shall contribute ratably if all the property of that class is not required for the payment of such debts or other items."

As there was no property falling under the first four orders of payment we look to the fifth order—"property not specifically bequeathed or devised." When we consider Gena's bequest we find a "demonstrative legacy" as defined by the statute.

The notes evidencing the purchase price of the lumber yard in the amount of $36,600.00 bequeathed to Gena was a "specific legacy" while any balance necessary to equal one-half the value of the land was to be paid in cash and constituted a "general legacy."

It necessarily follows that in the absence of sufficient cash left in the estate to satisfy all debts, taxes and demands and to pay cash to Gena to make up the difference between the unpaid notes and one-half the appraised value of the land, the cash which would make up the difference must be appropriated first to the payment of the demands against the estate. The only exception is state inheritance taxes which by other statutes, in the absence of anything in the will to the contrary, are apportioned among the legatees. (*In re Estate of West,* 203 Kan. 404, 454 P. 2d 462.) It is only to the extent that the cash is insufficient that such other demands are prorated and charged against the specific legacies.

We must conclude that the trial court erred in charging the demands against the estate for debts, expense of administration and federal estate taxes to the specific beneficiaries before exhausting property not specifically bequeathed.

We now come to the chief controversy in this litigation—did the testatrix intend to equalize the legacies of the three children by making the bequest to Gena from the personal property a charge against the two one-half sections of land devised to Harlan and Mary, if necessary?

The north half of a section of land was devised to Harlan by Paragraph Second. We ignore the farm machinery as there is no contention that its value was to be equalized.

The south half of the section of land was devised to Mary by Paragraph Third.

Both devises contained the provision "To Have and To Hold, forever."

Paragraph Fourth of the will provided for the appointment of three commissioners to appraise the land devised at its true value in money. It must be conceded that this was for the purpose of equalizing the legacies in accordance with Paragraphs Fifth and Sixth of the will, if possible, from the personal property.

Paragraph Fifth of the will designates Gena's legacy. She is to have "from my personal estate" property or money equal to one-half of the appraised value of the land devised to Harlan and Mary. The notes evidencing the purchase price of the lumber yard were to be set aside for this legacy and if not sufficient, the remainder was to be paid in cash.

Paragraph Sixth provided for cash equalization if the value of the two half sections were not the same.

After a careful examination of all the language of the will we find it to be clear, certain and free of ambiguity. There is nothing to indicate that the testatrix did not use the words she intended to use. Neither is there anything to indicate she did not understand the meaning of the words used. It is clear that the testatrix wanted the legacies of her three children equalized, provided it could be done from her "personal estate."

The language of the will being clear, definite and unambiguous, we need not, and should not, consider rules of judicial construction to determine the intention of the testatrix. In *Johnston v. Gibson,* 184 Kan. 109, 334 P. 2d 348, we held:

"Where a court, either trial or appellate, is called upon to determine the force and effect to be given the terms of a will, its first duty is to survey the instrument in its entirety and ascertain whether its language is so indefinite and uncertain as to require the employment of rules of judicial construction to determine its force and effect; and where from an analysis of the entire instrument no ambiguity or uncertainty is to be found in its language, the intention of the testator being clearly and unequivocally expressed, there is no occasion to employ rules of judicial construction and the will must be enforced in accordance with its terms and provisions." (Syl. 3.)

Our earlier decisions will be found in *In re Estate of Reynolds,* 173 Kan. 102, 244 P. 2d 234, where we stated:

"This court has long been committed to the rule that there is no necessity for construction of a will and that it is to be enforced in accordance with its terms where, from an analysis of the entire instrument, no ambiguity or uncertainty is to be found in its language. See, *e. g.,* the earlier case of *Martin v. Martin,* 93 Kan. 714, 145 Pac. 565, which holds:

"'When there is no ambiguity or uncertainty in the language used in the making of a will, a construction of the will is unnecessary, and it will be enforced in accordance with the provisions thereof.' (Syl. ¶2.)

"For other and more recent decisions without attempting to cite all of them, wherein the rule is differently stated but nevertheless adhered to, see *Morse v. Henlon,* 97 Kan. 399, 155 Pac. 800; *National Life Ins. Co. v. Watson,* 141 Kan. 903, 44 P. 2d 269; *Johnson v. Muller,* 149 Kan. 128, 131, 86 P. 2d 569; *Zabel v. Stewart,* 153 Kan. 272, 276, 109 P. 2d 177; *In re Estate of Ellertson,* 157 Kan. 492, 496, 142 P. 2d 724; *In re Estate of Works,* 168 Kan. 539, 541, 213 P. 2d 998." (p. 104.)

For later decisions see *In re Estate of Freshour,* 185 Kan. 434, 345 P. 2d 689; *In re Estate of Jones,* 189 Kan. 34, 366 P. 2d 792; *Parsons v. Smith, Trustee,* 190 Kan. 569, 376 P. 2d 899; *In re Estate* of Anderson, 203 Kan. 900, 457 P. 2d 67.

Those wishing to research cases from other states on the subject

may see 95 C. J. S., Wills, § 586, p. 716, and 57 Am. Jur., Wills, § 1124, p. 719.

It has been suggested that at the time the will was made, 1955, one-half the value of the land would not have exceeded $36,600.00 and at that time there was ample personal property to equalize the legacies to the three children. It is further suggested that the testatrix did not anticipate the appreciation of land values and therefore the court should equalize the legacies regardless of the plain and unambiguous language of the will. A court could not equalize the legacies without indulging in the most doubtful conjecture such as:

Would the testatrix have left the will the way it was written had she realized the increase in the value of the land? She did not change her will, yet she must have known the value of lands was increasing.

Would the testatrix have given the three children equal shares in the land had she known there would not be sufficient personal property to equalize the legacies? The fact must have been known before her death.

Would the testatrix have made a charge against the land to equalize the legacies had she known the personal property would not be sufficient? Would she have risked the forced sale of the land to strangers in order to equalize the legacies?

These are mere conjectures. There is nothing in the clear and unambiguous language of the will to indicate any such desire on the part of the testatrix.

We would not encourage the suggestion that a court may wander from the actual words of a will into the region of conjecture as to what it is reasonable to suppose the testatrix would have done had she contemplated a certain event happening. A court is not free to roam such unfenced fields of speculation. We refute the notion that any canon of construction entitles a court to indulge in its imagination and go into what the testatrix would have said had she anticipated a changed condition.

A court cannot correct a mistake made by a testatrix unless the mistake appears on the face of the instrument, and it also appears what would have been the will if the mistake had not occurred. The duty of the court is to construe not to construct the will. It is without power to modify the instrument for the purpose of making it conform to the opinion of the individual judge as to what consti-

tutes an equitable distribution of the testator's property. Neither can it make a conjecture as to what a testatrix would have done had she foreseen the future and then build up a scheme for the purpose of carrying out what it thought would have conformed to the desire of the testatrix.

In *Holmes v. Campbell College*, 87 Kan. 597, 125 Pac. 25, the court had before it a situation somewhat similar to what we have in the present case. We quote from page 600 of the opinion:

". . . Mrs. Shaw had capacity to make her will; she believed the specific bequests practically exhausted her property and it was only because of such belief that she allowed the provision to stand giving the residue to the college; if she had known its real value she would have left it to her heirs. *The provision can not be stricken from the will, however, merely because it was the result of a mistake of fact on her part. This would be in effect to reform the will, and the court possesses no such power.*

" 'Neither the will nor any part of it is affected by any mistake of law or fact which induced the testator to make it, and the courts can not amend or modify it so as to conform to what they imagine the testator would have done but for such mistake. For example, the will can not be denied probate nor any of its provisions limited or enlarged in effect because the testator did not understand their legal effect nor truly appreciate the proportions in which his property would be thereby distributed; nor because he would or might have made a different will.' (Rood on Wills, § 165.)" (Emphasis supplied.)

The cases from other states follow the rule as here stated.

In *In re Gilmour's Estate*, 238 N. Y. S. 2d 624, at page 627, it is said:

"In the interpretation of a Will, the intention of the testator, as gathered from the language of the Will, is, of course, controlling. (Bigelow v. Percival, 162 App. Div. 831, 148 N. Y. S. 242). *The fact that events happened subsequent to the probate of a Will which were not foreseen by the testator cannot change the meaning of the language used.* 'When the purpose of a testator is reasonably clear by reading his words in their natural and common sense, the courts have not the right to annul or pervert that purpose upon the ground that a consequence of it might not have been thought of or intended by him.' (Matter of Tamargo, 220 N. Y. 225, 228, 115 N. E. 462, 463) *'[W]e cannot make a new will, or build up a scheme, for the purpose of carrying out what might be thought was or would be in accordance with his wishes.'* (Tilden v. Green, 130 N. Y. 29, 51, 28 N. E. 880, 884, 14 L. R. A. 33.)" (Emphasis supplied.)

In *Hoffman v. McGinnes*, 277 F. 2d 598, 602, the federal court, in considering the law of Pennsylvania, stated:

"The rule was recently re-stated in Saunders Estate, 1958, 393 Pa. 527, at page 529, 143 A. 2d 367, at page 368, as follows:
*"The testator's intention is the pole star in the construction of every will and*

*that intention must be ascertained from the language and scheme of his will;* it is not what the Court thinks he might or would or should have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words (citing cases).' (Emphasis supplied.)"

Perhaps rather than attempt a compilation of the various cases supporting the rule it would serve better to cite a publication where the cases are compiled. In Volume 4 of the Bowe-Parker Revision of Page on Wills, § 30.7, pp. 40 to 51, we find the following statement:

"In construing a will, it will be presumed that the testator understood and intended the provisions thereof. As the courts are careful to discover and enforce testator's intention, but not to make a new will for testator, it follows that they constantly refuse to ascertain testator's intention except from the words which he used in his will, together with such extrinsic evidence as is admissible. The question always before the mind of the court is not what should testator have meant to do or what words would have been better for testator to use, but what is the reasonable meaning of the words which he has actually used.

"It has been suggested that this principle applies where the will is unambiguous. While the courts may have to go beyond the words of the will if the instrument is ambiguous and invoke other principles of construction, it would seem that the courts must always start with the language of the will.

"In construing a will the court has no power to make a will for the testator or to attempt to improve upon the will which testator actually made. The court cannot begin by inferring testator's intention and then construe the will so as to give effect to this intention, however probable it may be; nor can it rewrite the will, in whole or in part, to conform to such presumed intention. *If testator has omitted to provide for the state of affairs which actually has come to pass, the court cannot make the assumption that testator would probably have had a given intention if he had thought of the state of facts which actually existed, and give effect to such probable intention.*

". . . The court cannot resort to conjecture as to testator's intention if no intention can be extracted from the words of the will when construed in accordance with the recognized rules of construction and in the light of the surrounding circumstances, . . ." (Emphasis supplied.)

The numerous cases supporting the above statements will be found noted in the text. The more recent cases will be found in the pocket supplement.

We are forced to conclude that the trial court erroneously applied rules of judicial construction to a will although the language used was clear and unambiguous; speculated as to what the testatrix would have done had she considered the state of affairs that actually came to pass, and construed the will to give effect to such speculation. In doing so the trial court erroneously charged the specific

legacies with the payment of debts, administration expenses and other lawful demands, except state inheritance taxes, for the purpose of leaving funds available to apply on the general legacy.

The judgment is reversed with instructions to the trial court to enter judgment in harmony with what is stated in the opinion.

APPROVED BY THE COURT.

SCHROEDER, J., dissenting: The court in applying technical rules, pronounced and followed by courts throughout the history of Kansas law to give effect to the expressed intention of the testator in a will, reaches a conclusion absolutely inconsistent with the expressed and overriding intention of the testatrix in her will in this case.

Paragraphs Fourth, Fifth, Sixth and Seventh of the will are devoted exclusively to the expressed intention of the testatrix, Laura M. Graves, to *equalize* the distribution of her estate among her three children.

When Laura M. Graves died testate on the 9th day of November, 1965, she left surviving as her sole and only heirs at law her three children: Mary Faye Holland, a daughter (appellee); Gena M. Hildinger, a daughter (appellee); and Harlan L. Graves, a son (appellant). They are also the devisees and legatees under her will. She owned a section of land and a residence in Greensburg, all in Kiowa County. She also owned personal property which was inventoried and appraised at $54,324.31.

Included in the personal property was a note of Clay M. Hildinger, the *husband* of Gena M. Hildinger, in the amount of $36,600.

It is to be noted Harlan L. Graves was appointed *executor* under the will of Laura M. Graves. As executor he did not request the appointment of commissioners pursuant to paragraph Fourth of the decedent's will, which required the initiative of Gena, through her counsel, to accomplish the fulfillment of this condition.

Harlan contended the appraisal of the two half sections of land by the court-appointed appraisers at $44,800 each was sufficient to fulfill the requirements of the will for distribution and equalization purposes, but at Gena's insistence the commissioners appointed pursuant to paragraph Fourth, who were directed to appraise only the two half sections of land owned by the decedent for equalization purposes, valued the two half sections at $72,000 each.

The commissioners' appraisal was not made until eighteen months after the decedent's death, and it is assumed they valued the land

as of the date of the decedent's death, contrary to Harlan's contention that it was appraised at its increased value eighteen months after the date of the decedent's death. In my opinion these points made by Harlan have no merit, and in view of the court's determination of these points adverse to Harlan, further comment is unnecessary.

The decedent's will expresses her intention to give each of her three children an equal amount of her estate in value, except Harlan who was to receive the farm machinery and equipment belonging to the farm. To accomplish her purpose and intention, the testatrix devised the North Half of the section to Harlan, and the South Half of the section to Mary Faye. She then provided for the appointment of three commissioners with their only duty to appraise each of the half sections and to use the value they placed on the land as a means of equalization. Under paragraph Fifth the testatrix provided and bequeathed to Gena property or money equal to one-half of the appraised value of the section of land, as follows:

"Fifth. *From my personal estate* I will and bequeath to my daughter, Gena M. Hildinger, property or money *equal to one-half (½) of the appraised value of the land hereinbefore described,* and this bequest shall be satisfied in the following manner: I have heretofore sold to Clay M. Hildinger and J. D. Baer my interest in the partnership of Graves Lumber and Hardware Company; if at the time of my death the notes evidencing the purchase price and secured by said contract have not been fully paid then I direct that my executor shall transfer and set over to my daughter, Gena M. Hildinger, *such a portion of the unpaid notes as shall equal one-half of the appraised value of the section of land above described,* and if the unpaid balance of the notes shall not be sufficient *to equal one-half of the appraised value of said land* then the remainder of value *shall be paid in cash* to the said Gena M. Hildinger, *by my executor.*" (Emphasis added.)

Paragraph Sixth of the testatrix' will provided for *an equalization* between Harlan and Mary Faye, if the two half sections were not appraised at the same price.

By paragraph Seventh the testatrix left the residue of her estate *equally* to her three children.

Now, if Gena was to have property of the value of $72,000 to equalize the value with Harlan and Mary Faye, she was entitled to cash in the sum of $35,400 in addition to the $36,600 note of her husband, Clay M. Hildinger. The inventory and appraisal disclosed personal property in the amount of $54,324.31, including the note. This, together with the residence, which the executor had authority to sell and convert *to cash,* was appraised at $18,000, totaling

$72,324.31. If, for equalization purposes, these assets were applied to *the specific bequest* to Gena, there would be left $324.31 to be used for the payment of debts, taxes and expenses of administration.

While the residence was later sold at private sale by the executor for the sum of $14,781.12, which was less than the appraised value of the residence, according to the final accounting filed by the executor, the cash receipts and the Hildinger note still exceeded $72,000. However, there is not enough over and above the $72,000 required to equalize with Gena to pay the debts, taxes and expenses of administration. The question then is where does the executor get the money to pay the deficiency of the debts, taxes and expenses of administration, assuming the intention of the testatrix is carried out to equalize the distribution of her estate among her three children?

If the executor uses the cash in the estate to pay the indebtedness to which the testatrix directed attention in paragraph First of her will, Gena's bequest will not be equal to that of the other two children, and herein lies the ambiguity or uncertainty in the will. Paragraph First *does not say from what source the funds shall come to pay this indebtedness.*

The trial court held that one-third of such deficiency should come from the property bequeathed to Gena, one-third should be paid by Harlan and one-third should be paid by Mary Faye. Only upon failure to pay such deficiency by Harlan and Mary Faye was the obligation to become a charge against the real estate.

Mary Faye, against her pecuniary interest, and Gena both agreed with the orders of the trial court, but Harlan appealed. Mary Faye through independently employed counsel filed a brief in support of the trial court's decision.

The appellant (Harlan) claims that all of the debts, taxes and administration expenses should be paid from the cash on hand, and as a matter of fact, *the executor (Harlan)* has paid the debts and taxes from the cash, and contends that all of these items should be paid from the cash which would otherwise be used to equalize with Gena. The big problem, considering the assets of the estate, is the *federal estate taxes* which were in excess of $17,000, and the Kansas inheritance taxes in excess of $1,000. The federal estate taxes were based on $44,800 valuation for each half section of land, but the Federal Internal Revenue Service may open the matter for more taxes based on the $72,000 appraisal by the commissioners.

Under the court's decision all the cash will be spent for the debts, taxes and expenses, leaving only the Hildinger note for Gena in the amount of $36,600, which is slightly over half as much as Harlan and Mary Faye received, contrary to her mother's expressed intention in her will to equalize the distribution of her property.

The majority of the members of the court hold the trial court erroneously applied rules of judicial construction to the testatrix' will because the language used was clear and unambiguous. In the opinion the court says:

"Paragraph Fourth of the will provided for the appointment of three commissioners to appraise the land devised at its true value in money. It must be conceded that this was for the purpose of equalizing the legacies in accordance with Paragraphs Fifth and Sixth of the will, if possible, from the personal property." (p. 767.)

In so doing the court places undue emphasis on the words "From my personal estate" in paragraph Fifth of the will. From this expression the court *construes* the will to say the testatrix intended to say Gena's bequest should be paid "from my personal estate, if possible." It goes even further and says the testatrix meant "from my personal estate remaining after the payment of debts, taxes and expenses of administration."

What the testatrix said in paragraph Fifth was that Gena should receive from her personal estate *property* or money equal to one-half of the appraised value of the section of land, and if the indebtedness of Gena's husband at the time of the testatrix' death, as evidenced by note, was not sufficient to equal one-half of the value of the section of land as appraised by commissioners pursuant to paragraph Fourth, then the remainder of the value *"shall be paid in cash"* (Emphasis added) to Gena *by her executor.*

The rules stated by the court in its opinion and the Kansas authorities cited to support them are conceded to be the law of Kansas, but it is respectfully submitted the rules have been misapplied.

Based upon Kansas cases it makes little difference whether one speaks in terms of *"interpretation," "construing"* or *"construction"* of a will. The expressions have been used interchangeably. (See *Custom Built Homes Co. v. State Comm. of Rev. and Taxation,* 184 Kan. 31, 334 P. 2d 808; *Weiner v. Wilshire Oil Co.,* 192 Kan. 490, 389 P. 2d 803; *In re Estate of Cline,* 170 Kan. 496, 227 P. 2d 157; *Brown v. Brown,* 101 Kan. 335, 166 Pac. 499; *In re Estate of Miller,*

186 Kan. 87, 348 P. 2d 1033; and the many Kansas authorities cited in the court's opinion.)

In the case of *In re Estate of Cline,* supra, the court said in the first syllabus:

"The primary function of courts in the interpretation of wills is to ascertain the testator's intent. It must be gathered, if possible, from the four corners of the will and nothing between them may be ignored. When ascertained the intent will be executed unless contrary to law or public policy."

Similarly, in *Brown v. Brown,* supra, the first syllabus reads:

"A rule for the interpretation of wills, *to which all other rules are subordinate, is that the intention of the testator, as gathered from all parts of the will, is* to be given effect *and that doubtful or inaccurate expressions in the will shall not override the obvious intention of the testator."* (Emphasis added.)

In the *Brown* opinion the rule stated in Syllabus ¶ 1 was referred to as a canon of construction to which all other rules are subordinate.

In approaching any problem in the construction of a will certain definite rules are to be borne in mind. These rules were well stated in *In re Estate of Ellertson,* 157 Kan. 492, 142 P. 2d 724, as follows:

"There is no occasion for employing any rules of judicial construction where the intention is expressed clearly and unequivocally in the will (*National Life Ins. Co. v. Watson,* 141 Kan. 903, 905, 44 P. 2d 269). The will is to be construed so as to give effect to every part thereof, providing an effect can be given to it which appears to be consistent with the purposes of the testator as gathered from the entire will, and to effectuate rather than defeat the intention of the testator. (*Ernst v. Foster,* 58 Kan. 438, 49 Pac. 527; *Selzer v. Selzer,* 146 Kan. 273, 69 P. 2d 708.) Controlling significance is not to be given to one of the terms of devise or bequest and other terms ignored. (*Johnson v. Muller,* 149 Kan. 128, 86 P. 2d 569.) The court must put itself as nearly as possible in *the situation of the testator at the time he made the will and from a considera-*tion thereof and the language used in every part of the will, determine the purposes and intentions of the testator (*Dyal v. Brunt,* 155 Kan. 141, 123 P. 2d 307). All of the above rules are only phases of the fundamental rule that the intention of the testator is to be gathered from the will as a whole and that intention must prevail if it is consistent with the rules of law (*Zabel v. Stewart,* 153 Kan. 272, 109 P. 2d 177). The above cases are illustrative. Many others of like effect might be cited. *It is also to be borne in mind that a will speaks from the time of the testator's death, unless it plainly shows a contrary intention, and is to be construed as operating according to conditions then existing. . . . "* (pp. 496, 497.) (Emphasis added.)

Applying the foregoing rules, it is to be noted the conditions the court is obligated to take into consideration as of the time of the testatrix' death are: The extent of the property owned by the testatrix at the time of her death, its description as inventoried;

the appraised value of the property inventoried; the amount of indebtedness on the Hildinger note; the debts, taxes and expenses of administration; and the persons who were the object of the testatrix' bounty and her heirs. The executor recognized these conditions when he filed his petition for final settlement; the court in its opinion gave consideration to these facts; and in my opinion the court *construed* the will to arrive at its conclusion.

An effort will be made to interpret (or construe) the will of the testatrix herein in accordance with the above rules by giving expression to every word used in the will consistent with the overriding intention of the testatrix to equalize the distribution of her estate among her three children.

Paragraph First of the will is to be carefully noted. It does not direct that the debts, taxes and expenses of administration be paid from any given source, nor does it direct that the indebtedness be paid first. It merely directs the executor to pay them. Except as to state inheritance taxes mentioned therein, the direction is the same as required by law. It is to be noted the court in its opinion excepted the state inheritance taxes from its order to the executor.

The court in the instant case seems to have unwittingly followed the doctrine of the old *McNutt* case (*McNutt v. McComb,* 61 Kan. 25, 58 Pac. 965) which was disapproved repeatedly by subsequent decisions of this court. The *McNutt* rule has given way in the construction of a will to the rule that the testator's intention is to be gleaned from the entire text of the testament, and not by giving a controlling significance to any one paragraph as to render abortive other and subsequent provisions of the will, which likewise indicate part of the testator's purposes. (*In re Estate of Miller,* supra.)

A careful study of the will and all of the language used in each and every paragraph thereof discloses the overriding intention of the testatrix to equalize the distribution of her estate among her three children.

Both the appellant and the court in its opinion emphasize paragraph Fifth of the will, that the bequest to Gena should come from the personal estate and be satisfied by assigning the note to Gena with the remainder to be paid in cash. *The underlying question in this case is whether the bequest to Gena is on the same basis as the devises to Harlan and Mary Faye.*

The record discloses and the trial court found there was sufficient personal property and cash (considering that the residence was

reduced to cash by the executor as authorized) to equalize the value with Gena. However, after satisfying the bequest to Gena, there was not sufficient money left to pay the debts, taxes and costs of administration.

The appellant contends and the court holds that the deficiency of the amount remaining to pay debts, taxes, costs and expenses should come from the property bequeathed to Gena, and that neither Harlan nor Mary Faye should be required to pay any of the debts, taxes or expenses because they were devised real property.

This was not the intention of the testatrix expressed in her will. It thus seems quite clear that the will must either be interpreted or construed in this respect.

K. S. A. 59-1405 is cited by the court as the statute controlling the question. This must be conceded. This statute provides for the order in which the property is to be used for the payment of debts and other items. It states that *unless the will provides otherwise for the payment thereof,* the property of the testator, subject to the payment of debts and other items, shall be applied in the following order. Of material consideration in this case are order "(5) property not specifically bequeathed or devised;" and order "(6) property specifically bequeathed or devised."

The court in its opinion says:

"The notes evidencing the purchase price of the lumber yard in the amount of $36,600.00 bequeathed to Gena was a 'specific legacy' while any balance necessary to equal one-half the value of the land was to be paid in cash and constituted a 'general legacy.'" (p. 766.)

This sweeping statement, classifying the balance necessary to equal one-half the value of land as a "general legacy," fails to take into consideration the overriding intention of the testatrix in her will and it fails to comply with the statute (59-1405, *supra*). When the intention of the testatrix is taken into consideration the entire bequest to Gena must be classified as a specific legacy just as the land devised to Harlan and Mary Faye is classified as specific devises. This was the intention of the testatrix. Paragraph First of the will does not say from what source of funds the debts, taxes and expenses of administration shall be paid. It merely directs the executor to pay them which he is obligated by law to do absent such provision. Under these circumstances *the will does not provide otherwise* and the statutory scheme must be pursued.

The statute (59-1405, *supra*) simply says "property" which in-

·cludes both real and personal property. Thus, property specifically devised or bequeathed includes both a specific devise of real property and a specific bequest of personal property, and the property falling in this classification is all equally liable for the testatrix' debts. Consequently, when it becomes necessary to resort to assets thus given, the general rule is that the specific legacies and devises must contribute *pro tanto;* the measure of liability being· proportionate to the value of the respective properties at the testatrix' death.

In 2 Bartlett, Kansas Probate Law and Practice, § 831, it is said:

"The rule (that personal property is primarily liable for payment of debts) ought not to have any application where a testator makes a specific bequest of personalty. Such a bequest evidences a clear and unmistakable purpose upon the part of the testator to exonerate the property covered by it from the payment of debts. No stronger statement could be made with regard to realty specifically devised. Neither of these gifts should be preferred to the other. Sound equity dictates that they should contribute pro rata to the payment of debts in the case of a deficiency of assets. *It is not so much a question of the application of the abstract rule of law subjecting personalty before realty to the payment of debts, as it is an ascertainment of the testator's intention; and that intention is evidenced by his making specific bequests and specific devises.* In this manner the testator indicates a purpose on his part that both should be exonerated from debts. *When that becomes impossible because of deficiency of assets,* it is not logical to resort to the dry rule of law above referred to, but on the contrary to sustain the testator's intention as far as possible. This can only be done by subjecting the specific legacies and devises pro rata." (pp. 359, ·360.) (Emphasis added.)

This brings us back to the intention of the testatrix.

A supposititious case will bring into clear focus the intention of the testatrix in the instant case. Assume the testatrix had been· incompetent for the last ten years of her life and had lived a few years longer; that the price of the section of land she owned in Kiowa County, Kansas, had continued to inflate in value; and that the notes evidencing the balance of the purchase price of the· Graves Lumber and Hardware Company had been paid off and reduced to cash at the time of the testatrix' death. Assume further that the section of real estate had appreciated in value sufficiently to create a federal estate tax liability, together with other indebtedness directed by paragraph First of the testatrix' will to be paid,. which would consume the entire personal estate of the testatrix.. Under the court's decision Gena would take nothing; Harlan would take a half section of land free and clear, together with the farm· machinery and equipment belonging to such farm, and Mary Faye·

would take a half section of land free and clear. Could anyone say after reading the testatrix' will herein that she, under such circumstances, intended to disinherit her daughter, Gena? Yet, the rules applied by the court to the facts in this case to arrive at its decision could well lead to this result—a result which is absolutely contrary to the intention expressed by the testatrix in her will.

In *Baldwin v. Hambleton,* 196 Kan. 353, 411 P. 2d 626, Syllabus ¶ 3 reads:

"A will will be construed in favor of the heirs of a testator, and an heir, including a child of a deceased child, will not be considered as disinherited except by express words or necessary implication."

Why is this result accomplished by the court's decision? The court says it is because the testatrix failed to take into consideration changed economic conditions. It would be more nearly correct to say that the scrivener of the will failed to give adequate consideration to the prospect of federal estate taxes. Would the court under its decision permit a malpractice action against the scrivener of the will herein at the instance of Gena?

Why should the bequest to Gena be classified as specifically bequeathed property? Because this was the intention of the testatrix.

This subject has been exhaustively treated in 6 A. L. R. 1353-1395, and supplemented in 64 A. L. R. 2d 778-811, under an annotation entitled: "When legacy is regarded as demonstrative." It is now well settled by courts that the rules of construction generally apply to effectuate the testator's intention in determining whether or not a legacy is demonstrative, general or specific. In 6 A. L. R. 1358, 1359, it is said:

"The general rules with reference to the interpretation of wills are fully applicable in determining whether a legacy, in any particular instance, is to be treated as demonstrative, general, or specific. Especially operative is the rule that effect will be given to the intent of the testator as evinced by the words of the will, and, in cases where such evidence is admissible, by surrounding circumstances. . . .

". . . As a matter of fact, a legacy is classified for convenience in treatment as general, specific, or demonstrative, because it appears to possess certain characteristics and incidents, *and these incidents attach because they are construed to have been intended by the testator in the first instance.* Thus it is said that a gift of a specified sum of money with reference to a certain fund is either specific or demonstrative. It is specific, if the fund is designated as the exclusive source out of which the legacy is to be paid; it is demonstrative, if the fund is merely the primary but not the exclusive source for the satisfaction of the legacy. Now it is clear that whether this fund should be considered as

the exclusive source or not must, by the ordinary rules of construction, depend on the intent of the testator in designating the fund, and it is said that *a legacy is classified according to the incidents it is designated to possess by the testator, and not that it possesses these incidents because of its classification.* This process of reasoning is found in the general modern authorities, and is supported by the following cases, which hold that the intent of the testator is of primary importance in determining the nature of a legacy: [Many citations follow.]" (Emphasis added.)

After K. S. A. 59-1405 sets forth the order of payment of debts and other items from the property of a testator, it provides in part:

"Demonstrative legacies shall be classed as specific legacies to the extent of the payment thereof from the fund or property out of which payment is to be made, and as general legacies upon failure or insufficiency of the fund or property out of which payment was to be made to the extent of such insufficiency. . . ."

The bequest to Gena is treated by the court as demonstrative. But the court concludes the legacy to the extent it is payable from the Hildinger note is a "specific bequest" under the statute, and to the extent it is payable from cash it is a "general bequest" under the statute.

If the bequest to Gena is demonstrative, the particular fund or property out of which it was made payable is the decedent's "*personal estate.*" The testatrix *prefaced the bequest to Gena in paragraph Fifth of her will: "From my personal estate."* (Emphasis added.) Under the above statutory scheme the entire bequest to Gena is a "specific legacy."

I seriously question whether the legacy to Gena was demonstrative as that term has been defined in the case law. A specific legacy is one which is to be paid only out of a particular source or fund designated by the will, so that if the fund out of which it is payable is extinguished, or such a change in it is made as makes it another thing, the bequest fails for reasons paramount to considerations of intention.

Clearly, it was the intention of the testatrix to give Gena a specific legacy equal to one-half the value of the section of land, the only uncertainty in the bequest being the amount required to equalize the distribution of the estate among the testatrix' three children. By paragraph Fourth the testatrix specified how to ascertain this sum to make it certain and specific. Failure to so interpret the will would ignore paragraph Fourth, which further gives a clue to the intention of the testatrix. By giving effect to the intention

of the testatrix the bequest in paragraph Fifth of the will was equivalent to a specific bequest of $72,000 to Gena.

The appellant contends the orders of the trial court could require the executor to sell the land if necessary to pay the debts, taxes and expenses. The trial court provided that contributions should be made by Harlan and Mary Faye which would avoid the necessity of selling the land. Mary Faye has consented to the orders of the court and a contribution would be made by her if the trial court were to be sustained. Harlan, however, refused to accept the orders of the court, and the trial court was required to provide some way to enforce collection of the contribution, which could be the sale of the land. In this case the trial court has equity powers to require compliance with the terms of the will in accordance with the intention of the testatrix, and the court is obligated to enforce compliance with 59-1405, *supra,* where the property of the decedent is liable for her debts and other lawful demands against her estate.

K. S. A. 59-301, referring to the powers of the probate court, states as follows:

"(12) And they shall have and exercise such equitable powers as may be necessary and proper fully to hear and determine any matter properly before such courts."

Even before our present probate law which specifically extends to probate courts wide equitable powers, probate courts did have some equitable powers. In *Selzer v. Selzer,* 146 Kan. 273, 69 P. 2d 708, the court required contribution and made it a charge on land. The court said that if a devisee accepted a devise of land, he did so with all obligations that might attach thereto in carrying out the intentions of the testator.

It is respectfully submitted the judgment of the lower court should be affirmed.

PRICE, C. J., and KAUL, J., join in the foregoing dissent.