No. 46,640

In the Matter of the Estate of Anna B. Ricklefs, Deceased. (JOHN ATWATER, Administrator, c. t. a., *et al., Appellees,* v. KATHLEEN MEEKS, ALBERTA CANTER, FLOYD CORDONIER, HOWARD CANTER, ANDREW CANTER, DARLENE MEIDINGER, JERRY CANTER, ROBERT CANTER, FREDA CANTER, MRS. HAROLD THOMPSON, FRANCES FOX, MARILYN Y. GEORGE, GERTRUDE BAUMAN, WANDA CHAPLIN, W. J. CANTER, DONNA MOLLENKOPF and MAXINE CHRISTMAS, *Appellants.*)

(508 P. 2d 866)

Opinion filed April 7, 1973.

*Robert F. Duncan,* of Atchison, argued the cause, and *Richard P. Senecal,* of Atchison, was with him on the brief for appellants.

*Robert A. Reeder,* of Troy, argued the cause and was on the brief for appellee administrator with the will annexed.

*Jack R. Euler,* of Euler and Euler, of Troy, argued the cause, and *J. D. Euler,* of the same firm, was with him on the brief for appellees BARBARA L. RICKLEFS, Executor of the Last Will and Testament of the Estate of Theodore D. Ricklefs, deceased; DELUS W. RICKLEFS; NORA ANN HIBSMAN.

The opinion of the court was delivered by

FATZER, C. J.: This appeal presents a single question for the court's determination—did a devise under a will lapse because the death of the beneficiary occurred prior to the death of the testatrix?

Anna B. Ricklefs executed her last will and testament on April 12, 1960. She was a widow without children. The will provided, in part:

"First: It is my will and I direct that all of my just debts be paid as soon after my demise as is practical by my executor.

"Second: It is my will and I direct that my executor shall within one year after my demise, sell and convert into cash all of my property, be it real, personal or mixed, that I have not otherwise disposed of in this my last will and testament, and shall distribute the same as hereinafter directed.

"Third: I give, devise and bequeath to Anna Mae Staudenmaier the entire contents of my home.

"Fourth: I give, devise and bequeath to Delus W. Ricklefs, all of the shares of stock I own in Investors Mutual, Incorporated, Minneapolis, Minnesota, that I own at my demise.

In the fifth paragraph of the will the testatrix "gave, devised and bequeathed" the sum of $35,500 to sixteen beneficiaries ranging in amounts from $1,000 to $15,000. Except for gifts to four charitable institutions in Kansas and Nebraska, all bequests were to individuals. Of the remaining twelve bequests, one was to Anna Mae Staudenmaier for $15,000, and one was to Theodore D. Ricklefs for $8,000. Nora Ann Ricklefs, Theodore's daughter, was bequeathed $1,000, and each of Anna Mae Staudenmaier's six children were bequeathed $1,000.

The sixth paragraph of the will reads:

"Sixth: After the payment of the bequests above set out, it is my will and I direct that my executor, hereinafter named, shall distribute the remainder of the money left in my estate, to the following named persons who survive me; if any of the following named persons predecease me, then it is my will and I direct that the share that such person would have received, had he or she survived me, shall lapse and become a part of the residue of my estate. The following is a list of those entitled to share in the residue of my estate: *Share and Share alike.* A. B. R."

The testatrix then named 47 beneficiaries. Theodore D. Ricklefs was nominated executor to serve without bond.

On July 3, 1968, Anna B. Ricklefs declared and published a codicil to her last will and testament in which she declared,

". . . I do hereby republish, ratify and reaffirm my said last will and testament in all respects as modified by this First Codicil in manner and form following:

"First. I will, devise, and bequeath to Anna Mae Staudenmaier my Home Place consisting of two hundred (200) acres and described as the Northwest Quarter of Section Ten (10) and also the North Half of the North Half of the Southwest Quarter of said Section Ten (10), all in Township Four (4) South,

Range Twenty (20) East of the 6th P. M., Doniphan County, Kansas, to be hers absolutely.

"SECOND. I will, devise and bequeath to Theodore D. Ricklefs one hundred sixty (160) acres of land described as the Southeast Quarter of Section Four (4), Township Four (4) South, Range Twenty (20) East of the 6th P. M., Doniphan County, Kansas, to be his absolutely.

"THIRD. In my Last Will and Testament I have made bequests to many people, a number of whom have passed away since the date of my original Last Will and Testament. None of these are to be beneficiaries under my Last Will and Testament unless they survive me, and I do not at this time rename such beneficiaries because of the possibility that additional named beneficiaries may die prior to my death. It is my will and I direct that none of the bequests made in my Last Will and Testament shall be valid and be paid unless the named beneficiary survives me.

"FOURTH. I appoint Theodore D. Ricklefs as executor of this First Codicil to my Last Will and Testament and of my Last Will and Testament and I direct that he be permitted to serve in such capacity without bond. However, in the event Theodore D. Ricklefs should for any reason fail, refuse or neglect to qualify and serve, I direct that any court-appointed fiduciary serve with bond. I further direct that my executor or any fiduciary serving in his stead shall be represented by Robert A. Reeder as his attorney."

There was a controversy in the probate court as to whether the devise and bequest to Theodore D. Ricklefs lapsed because of his death previous to the death of the testatrix. The matter came before the probate court on the petition of the administrator c. t. a. for an order construing the last will and testament. The probate court held the devise did not lapse and an appeal was taken to the district court by nine beneficiaries under the residuary clause.

It was stipulated in the district court:

"1) That the date of death of ANNA B. RICKLEFS was February 23, 1970.

"2) That THEODORE D. RICKLEFS died on October 16, 1969, prior to the death of ANNA B. RICKLEFS.

"3) That THEODORE D. RICKLEFS was the son of a brother of the deceased husband of ANNA B. RICKLEFS and a nephew of marriage; that THEODORE D. RICKLEFS was not a blood relative of ANNA B. RICKLEFS."

The district court also, over the objection of the appellants, permitted testimony as to the relationship which existed between the testatrix and Anna Mae Staudenmaier and Theodore D. Ricklefs, and the assistance which they gave her, that "[s]he did not rely on anyone else for assistance or personal business matters other than Ted and Anna Mae." The district court concluded, in part:

"IT IS BY THE COURT FURTHER CONSIDERED, ORDERED, ADJUDGED AND DECREED that the devise of real estate made by Anna B. Ricklefs in the 'second' paragraph of the July 3, 1968, First Codicil to her Last Will and Testament did not lapse by reason of the death of Theodore D. Ricklefs prior to the death

of Anna B. Ricklefs and that such devise is valid and operative in favor of Delus W. Ricklefs and Nora Ann Hibsman, children and sole issue of Theodore D. Ricklefs."

An appeal was then taken to this court. Neither party suggests there are any conflicting provisions or ambiguities in the will or codicil—in fact the appellees concede there are no words or language employed by the testatrix which are unclear and ambiguous. Likewise, reference to the district court's memorandum opinion fails to disclose its use of the words "ambiguous," "ambiguity," or words of similar import. In fact, the district court's reason was predicated in part upon the fact that testatrix ". . . did not attach a survival clause to the validity of the bequest or devise," rather than on any ambiguity discovered within the words employed in her will. Construction does not become necessary unless it appears the terms of the will are so uncertain and ambiguous as to require judicial construction.

In *In re Estate of Graves*, 203 Kan. 762, 457 P. 2d 71, we restated the responsibility of this court when the meaning of language in a will is challenged, and held:

"The first responsibility of a court when the meaning of the language in a will is challenged is to determine from a consideration of all the language whether a conflict or ambiguity exists.

"This court has long been committed to the rule that where from an analysis of the entire instrument, no ambiguity or uncertainty is to be found in its language, the intention of the testator being clearly and unequivocally expressed, there is no occasion to employ rules of judicial construction and the will must be enforced in accordance with its terms and provisions." (Syl. ¶¶ 2, 3.)

See, also, *In re Estate of Freshour*, 185 Kan. 434, 345 P. 2d 689, where we stated:

In determining the force and effect to be given the terms of a will, the court's first duty is to survey the instrument in its entirety and ascertain whether its language is so indefinite and uncertain as to require the employment of rules of judicial construction. Where, from an analysis of the entire instrument, no ambiguity or uncertainty is to be found in its language, the intention of the testator being clearly and unequivocally expressed, there is no occasion to employ rules of judicial construction and the will must be enforced in accordance with its terms and provisions. . ." (l. c. 438.)

This court finds no conflicting provisions or ambiguities in the language of the will or the codicil. As indicated, the last will and testament made specific bequests to Anna Mae, the testatrix' niece, and to Theodore, nephew of the testatrix' deceased husband. It then provided that all the rest of the money remaining in the estate,

all assets having been sold and converted to cash, was to be paid to "the following named persons who survive me." There were 47 beneficiaries named, 22 of whom were the testatrix' blood relatives, and 25 were blood relatives of her deceased husband. In the same paragraph, the will specifically provided that:

"If any of the following named persons predecease me, then it is my will and I direct that the share that such person would have received, had he or she survived me, shall lapse and become a part of the residue of my estate."

We think the provisions of her will devising the remainder of the major portion of her estate between her surviving blood relatives and the surviving blood relatives of her deceased husband clearly express her intention to dispose of the residue of her estate almost equally between their blood relatives.

Some eight years later Anna B. Ricklefs made a codicil to her last will and testament in which she ratified and reaffirmed her last will and testament in all respects as modified by the codicil. The codicil devised and bequeathed 200 acres of land (description omitted) to Anna Mae, the testatrix' niece, and also devised and bequeathed 160 acres of land to Theodore, nephew of her deceased husband. No attempt was made to designate whether the devise to Theodore would lapse if his death occurred before that of the testatrix.

We find nothing in the will or the codicil which would indicate what disposition should be made of the devises in case the devisees died before the death of the testatrix. Under such circumstances, we find the general rule is stated in 57 Am. Jur., Wills, § 1425, p. 956, as follows:

"That a devise or legacy in favor of a person individually and not jointly with others will lapse upon the death of the donee in the lifetime of the testator, unless the testator has indicated a contrary intention or a controlling statute necessitates a different result, is the doctrine supported by innumerable decisions. The ultimate destination of the subject matter of such a legacy or devise is a question of some complicatedness, and for present purposes it is enough to point out that the effect of a lapse is primarily to bar any claim of the personal representative or assignee of the original donee. . ."

Under such circumstances the rule to be followed is well stated in *In re Estate of Zimmerman,* 207 Kan. 354, 485 P. 2d 215, where this court approved the general rule, and said:

". . . Accordingly, no title to the farm would pass to Charles under John's will. The weight of authority in this country appears to be that a devise or legacy in favor of a person in his individual capacity—not jointly with others—will lapse upon his death prior to the testator's decease unless the testator has expressed a different intention or unless a controlling statute other-

wise directs. (57 Am. Jur., Wills, § 1425, p. 956; 3 A. L. R. 1682, Wills—Lapse—Deceased Devisee; *Keasey v. Engles*, 259 Mich. 178, 242 N. W. 878.) Kansas, like many if not most of its sister states, has addressed itself to this problem through the medium of it legislature, and the enactment of what is now K. S. A. 1970 Supp. 59-615 has been the end result. However, this statute does not apply here, because Charles died without issue—his widow being his sole heir. 59-615 is called into effect only when a blood relative within the sixth degree of consanguinity dies leaving issue who survive the testator." (l. c. 358.)

K. S. A. 59-615 as it provided at the time the will was executed (1960) reads:

"If a devise or bequest is made to an adopted child or any blood relative by lineal descent or within the sixth degree, and such adopted child or blood relative dies before the testator, leaving issue who survive the testator, such issue shall take the same estate which said devisee or legatee would have taken if he had survived, unless a different disposition is made or required by the will."

The statute was amended in 1968 and again in 1970, but the amendments only pertained to a more specific definition of issue and did not affect the provision applicable here.

As Theodore was not a relative of the testatrix by lineal descent or adoption, neither he nor his issue were furnished any relief by the statute and the bequest or devise to him lapsed on his death before that of the testatrix. Hence, this court concludes that no different disposition was made or required by the language of the will. In 57 Am. Jur., *op. cit., supra,* the rule is stated:

"While it is everywhere recognized that the question whether a legacy or devise shall lapse or not is subject to the testatorial intention, the view is sometimes expressed that an intention that a testamentary gift shall not lapse upon the death of the donee in the testator's lifetime must clearly appear before it will be held that a lapse did not occur. The usual method of indicating an intention that a gift should not lapse is by an express substitution of another beneficiary in case of the death of the original donee. . ." (§ 1428, p. 958.)

The district court in considering whether a different disposition was made or required by the will, stated in its memorandum opinion:

"We now turn our attention to the intention of the testatrix, Anna B. Ricklefs."

. . . . . . . . . . . . .

"Two persons provided the most help, assistance and attention of Anna B. Ricklefs, those persons being Anna Mae Staudenmaier and Theodore D. Ricklefs. Anna Mae Staudenmaier, a niece of the decedent was the only child of Robert Canter, a deceased brother of Anna B. Ricklefs. Theodore D.

Ricklefs was a son of a brother of the prior deceased husband of Anna B. Ricklefs and was a nephew of Anna B. Ricklefs by marriage."

It would appear the district judge admitted extrinsic evidence from which he inferred an intention of the testatrix, and then proceeded to modify her will to make it conform to his individual opinion. This, a court cannot do. For this court to hold the testatrix intended that the devise to Theodore would not lapse even though he predeceased her, would require us to add words to her will providing for the substitution of a beneficiary.

In *Graves,* supra, we held:

"In considering a will a court cannot begin by inferring a testator's intention and then construe the will to give effect to such intention however probable it may be, nor can it rewrite the will, in whole or in part, to conform to such presumed intention. It is the duty of a court to construe not to construct a will." (Syl. ¶ 4.)

And in the opinion it was said:

"A court cannot correct a mistake by a testatrix unless the mistake appears on the face of the instrument, and it also appears what would have been the will if the mistake had not occurred. The duty of the court is to construe not to construct the will. It is without power to modify the instrument for the purpose of making it conform to the opinion of the individual judge as to what constitutes an equitable distribution of the testator's property. Neither can it make a conjecture as to what a testatrix would have done had she forseen the future and then build up a scheme for the purpose of carrying out what it thought would have conformed to the desire of the testatrix." (l. c. 769, 770.)

In the opinion we quoted with approval from Volume 4 of the Bowe-Parker Revision of Page on Wills, as follows:

" 'In construing a will . . .' "

. . . . . . . . . . . .

" '. . . the court has no power to make a will for the testator or to attempt to improve upon the will which testator actually made. The court cannot begin by inferring testator's intention and then construe the will so as to give effect to this intention, however probable it may be; nor can it rewrite the will, in whole or in part, to conform to such presumed intention. *If testator has omitted to provide for the state of affairs which actually has come to pass, the court cannot make the assumption that testator would probably have had a given intention if he had thought of the state of facts which actually existed, and give effect to such probable intention.*

" '. . . The court cannot resort to conjecture as to testator's intention if no intention can be extracted from the words of the will when construed in accordance with the recognized rules of construction and in the light of the surrounding circumstances. . .' " (l. c. 771.)

This court must presume the testatrix knew the law of Kansas at

the time she signed her will and codicil. In *In re Estate of Sowder,* 185 Kan. 74, 340 P. 2d 907, this court stated:

". . . It could not reasonably be said that the will was ambiguous merely because the testator neglected to provide against this contingency, being content, presumably, to rely upon the disposition which would occur in that event by the settled statutory and decisional laws of Kansas. In this connection, the testator is presumed to have known the law of Kansas at the time he signed his will. (*McConnell v. Hamm,* 16 Kan. 228; *Durboraw v. Durboraw,* 67 Kan. 139, 72 Pac. 566; *Householter v. Householter,* 160 Kan. 614, 164 P. 2d 101; and *In re Estate of Walton,* 183 Kan. 238, 326 P. 2d 264.)" (l. c. 82, 83.)

Applying the foregoing rule to the facts and circumstances, the testatrix is presumed to know that under the law of this state the devise of land to her niece, Anna Mae would stand because she was blood relative by lineal descent, but that the devise to Theodore, the nephew of her deceased husband, would lapse if he predeceased her, unless there was a clearly expressed intention in her codicil plainly declaring otherwise. We find no language in her codicil expressing such intention. Certainly she would not have left such intention to be derived from a field of speculation and conjecture.

While the ascertainment of the intention of the testator is the polestar in interpreting a will, fixed rules should not be disregarded. Every testator, when he uses legal language having a common and accepted meaning, should be supposed to use it in its legal sense unless he plainly declares otherwise. If courts should indulge an unlimited latitude of forming conjectures on wills by continually placing themselves in the position of the testator to ascertain his intentions, instead of attending to their grammatical and legal construction, the consequences must be endless litigation. If we depart from the established rules of interpretation, without an abiding conviction the meaning of the testator's will requires that we do so, no interpretation, with respect to the title to an estate that depends upon a will can be safe until it has received the approval of the court. Lawyers and testators of the state should be able to rely with confidence upon rules of property in preparing and executing wills, and be assured the intent of the testator as expressed therein will be carried out, instead of a will being made the instrument of introducing a vague discretionary law formed upon the occasion from the circumstances, to which no precedent can be applied, and from which no rule can be deduced.

The judgment is reversed with instructions to the district court to enter judgment in conformity with this opinion.

OWSLEY, J., dissenting: Despite the many rules and guidelines quoted in the opinion for the court with which I fully agree, the fact remains that probably no two wills were ever written in precisely the same language. Neither is it likely that any two testators would die under the same circumstances with respect to their estates, families, or other objects of their bounty. Thus, even though general rules and guidelines are to be recognized, the fact remains that each will must be construed by its own terms and with regard to the circumstances under which it was written. This simple fact is recognized in *Giese v. Smith*, 195 Kan. 607, 408 P. 2d 687, wherein we said:

". . . [L]ittle aid can be derived from other judicial decisions and opinions unless the words of the two wills are substantially identical." (p. 610.)

The intention of the testatrix is easily gleaned from a reading of her will and codicil. The primary objects of her bounty were Anna Mae Staudenmaier and Theodore D. Ricklefs and their respective children. The children were designated beneficiaries in the will. The testatrix intended that Anna Mae and Theodore receive legacies generally equal in nature and further that her estate be divided one-half to her relatives and one-half to her husband's. In her will she specifically provided for the lapse of residuary legacies. Likewise, in the third paragraph of her codicil she again directed that no bequest made in her will be paid unless the named beneficiary survived her. It is significant that in the preceding paragraph the devise is made to Theodore "to be his absolutely" without mention of survivorship. The words and phrases read together in the light of what was said and what was omitted clearly manifest the intention and testamentary scheme of testatrix; *i. e.*, substantial bequests, approximately equal in value, to Anna Mae and Theodore, neither to lapse, the remainder after specific bequests divided in approximately equal portions between the surviving Staudenmaiers on the one hand and the Ricklefs on the other. The specific bequests to Anna Mae and Theodore were made in identical language, each devise ending in the phrase "to be his [hers] absolutely." I am unable to presume the testatrix knew that under the law Anna Mae's devise would not lapse, but Theodore's would. The presumption is much stronger that had she intended either or both to lapse she would have said so as she did with respect to those bequests which she intended to lapse. The addition of the phrase "to be his absolutely" was unnecessary in composing a simple devise, but it, like

all other portions of a will and codicil, must be given effect if possible. Admittedly, the phrase cannot be construed to be a substitution—the usual method employed to expressly provide against lapsing. The effect to be given the phrase is that it expresses an intention to give the devises to which it was attached a higher quality than that of all of the other bequests and devises from which it was omitted. Furthermore, to hold otherwise would result in a substantial part of her estate falling into the residue contrary to her intention that the residuary legatees would receive only a nominal portion of the estate.

As noted in the opinion for the court, the general rule is stated in 57 Am. Jur., Wills, § 1428, p. 958: "While it is everywhere recognized that the question whether a legacy or devise shall lapse or not is subject to the testatorial intention. . . ."

It is apparent from the language in the first codicil the testator directed its preparation for two purposes. First, to devise a farm to Anna Mae Staudenmaier and a farm to Theodore D. Ricklefs; and second, to provide that if any of the named beneficiaries in her first will died before her death the bequest would lapse and be paid to those named beneficiaries who survived her. Since she was concerned with those beneficiaries who died and those who might die before her death it is not realistic to say she did not have in mind the possibility that Theodore D. Ricklefs might not survive her. The language employed in the third paragraph of her codicil makes the omission of the imposition of survivorship on the devise to Theodore D. Ricklefs a glaring expression of intention. An accumulation of all the language used by the testatrix and giving each word and phrase its proper contribution and significance to the total, manifests an intention that the requirement of survivorship was not to be imposed upon the devise to Theodore D. Ricklefs.

The judgment of the trial court that the property passed to the children of Theodore D. Ricklefs is correct. We do not find any statute specifically controlling the descent of property under the facts disclosed in this case. We do find, however, that the holding of the trial court is in harmony with the statutes of this state and such case law as exists relating to substituted beneficiaries.

K. S. A. 1972 Supp. 59-615 provides for issue to take when there is prior death of an adopted child or blood relative within the sixth degree. Although Theodore D. Ricklefs is not an adopted child or blood relative within the sixth degree, which would prevent the lapse of his devise according to statute, it is my opinion that the

devise did not lapse under a proper construction of the will and codicil for the reasons hereinbefore stated. Since the legislature has spoken on the subject of substituted beneficiaries of a devise which does not lapse, we see no reason why the statutory expression should not be applied to this will and codicil. Such a finding is also consistent with K. S. A. 59-506 which provides the issue of a previously deceased child of an intestate shall take to the exclusion of the spouse of the previously deceased child. Such a holding would also be in harmony with our statute, now repealed (Gen. Stat. 1915, § 11811) and the case law construing that statute. (*Corbett v. Skaggs*, 111 Kan. 380, 207 Pac. 819.)

The reasoning supporting this conclusion is that these children are substituted beneficiaries or heirs in the sense that the prior decedent was the primary beneficiary and because of his prior death his issue are substituted. The rights of issue of a prior deceased beneficiary or heir are acquired not because such person is a distributee or heir-at-law of a deceased person, but because he or she stands in the place of the prior deceased person and represents him as a blood descendant. (26A C. J. S., Descent & Distribution, § 23, p. 564.)

The judgment of the trial court should be affirmed.

SCHROEDER and KAUL, J. J., join in the foregoing dissent.